Gilmer v. Ware.

## GILMER vs. WARE.

1. A slave was sold at public auction under a mortgage executed by B. to the Bank, and bought in by the bank agent, who sold him the next day at private sale to W. W. afterwards discovering that the slave was unsound, refused to give his note for the purchase money, but tendered him back to the agent, and demanded a rescision of the contract, which the agent refused. It was afterwards agreed between them, that the slave should be re-sold under the mortgage to the Bank, and that W. should pay whatever difference there might be between the price on the re-sale, and that which he had originally agreed to give. The slave was accordingly re-sold under the mortgage, at public auction, and purchased by G. *Held*, that the re-sale under the mortgage did not amount to a rescision of the contract between W. and the bank agent, but that W. was the owner of the slave at the time of the re-sale, and the party really and beneficially interested in the re-sale.

2. When the entire record affirmatively shows, that the plaintiff below can never recover, and the matter which renders a recovery impracticable is obvious and undisputed, the appellate court will not reverse in his favor, on account of errors in the charges of the court below.

3. When the purchaser of a slave sold at public auction pays the purchase money after he has been informed of the slave's unsoundness, and of facts which would constitute a fraud in the sale, he cannot afterwards recover damages in an action of deceit, on account of such unsoundness.

Gilmer v. Ware.

ERROR to the Circuit Court of Montgomery.  Tried be-
fore the Hon. Robert Dougherty.

The material facts of the case, and the first charge of the
court, are set out at length in the opinion of the court.  The
court below also charged the jury, that if they believed from
the evidence, that before Gilmer paid the purchase money, he
was informed by Whiting of the previous sale at auction, and
of the sale to Ware, and of all that had been said by Ware and
Benbow about the unsoundness of the slave, and he afterwards
paid the purchase money, then the plaintiff could not recover.
To this charge the plaintiff excepted.  The plaintiff then re-
quested the court to give a charge substantially the reverse of
the one above given, which the court refused, to which refusal
the plaintiff excepted.

ELMORE & YANCEY, for plaintiff in error.

BELSER & HARRIS AND WATTS & JACKSON, *contra:*
The only errors assigned are the charges given, and one re-
fused :

1.  The first charge merely asserts the proposition, that the
facts stated constituted a conditional rescision of the contract
between Whiting and Ware.  If Whiting had authority to make
the contract, he had the same authority to rescind.  Assuming
this fact, the charge certainly is not objectionable.  But if it
should be held objectionable, it is difficult to see how the plain-
tiff was injured by the charge.—12 Ala. 604; 2 ib. 730; 7 ib.
444; 5 Stew. & Port. 264; 4 New Hamp. 196; 5 Ohio, 380;
Mason, 437.

2.  (1) The 2nd charge merely asserts the proposition, that if
a party with full knowledge of the facts and circumstances which
constitute a fraud, recognizes or affirms a contract tainted with
fraud, he cannot afterwards set up the fraud to defeat the con-
tract.  That this is law, see McGowan v. Garrard & Mor-
gan, 2 Stew. 479; Landon v. Roane, 6 Ala. 518; Story on
Contracts, 413, § 497; Parsons v. Hughes, 9 Paige, 591; 28
Eng. Com. Law, 29-30; 1 Adolph & Ellis, 40; Hough v. Rich-
ardson, 3 Story, 695-8; Selway v. Fogg, 5 Mees. & Welsby,
83; Chitty on Con. 680.

(2.)  If, after the fraud practised on him comes to his know-

ledge, he deals with the subject matter of the contract, or does any act importing an intention to stand by it, or remains silent under circumstances which plainly indicate a continuing assent thereto, or if he acquiesce in the contract expressly, he cannot afterwards avoid it.—See Story on Con. 413, § 497, and all the authorities *supra*. And this is so, although he subsequently discovers other circumstances connected with the same fraud.—See Chitty on Con. 680-1; Campbell v. Fleming, 1 Adolph & Ellis, 40; Selway v. Fogg, 5 Mees. & Welsby, 83.

3. (1) The charge asked and refused may be construed to mean the reverse of the last one given; if so, the authorities cited above show that it was properly refused.

(2) The first part of it seems to assert the proposition, that if a party buys a negro, which is unsound, he can recover, if he offers to return within a reasonable time, when there was a warranty and no fraud. (This is not law.)—See Ricks v. Dillahunty, 8 Porter.

(3.) The form of the action does not make any difference as to the principles asserted under the second point. If the party has by his acts once waived the fraud, he cannot afterwards bring any sort of action to recover on account of the fraud. See the authorities above.

4. The facts set out in the bill of exceptions do not constitute a fraud. They show that the only object of a re-sale under the mortgages, was to settle the difficulty between Ware and Whiting. In order to constitute a fraud, there must be either a misrepresentation of something material, or a suppression of the truth with intent to deceive; and the purchaser must rely on the representations, and be deceived by them.—See Chitty on Contracts, 681-2-3. Hough v. Richardson, 3 Story, 690; Burnet v. Stanton & Pollard, 2 Ala. 181; Vanarsdale & Co. v. Howard, 5 Ala. 596. And the facts and circumstances constituting the fraudulent representations must be naturally calculated to mislead and deceive.—See authorities *supra*.

CHILTON, J.—This was an action on the case for deceit in the sale of a slave. The questions presented for our revision arise upon certain instructions which were given by the court to the jury, and which are set out in the bill of exceptions. The better to comprehend the points of law involved in the charges

as well as their applicability, it is necessary briefly to state the facts upon which they were predicated.

It appears that on the 5th day of February, 1849, the slave in controversy was sold under a mortgage, made by one Adam Benbow, to secure a debt due to the Branch of the Bank of the State of Alabama at Montgomery, and at said sale, which was by public auction, the said slave was bid in by John Whiting, who was at the time the agent and assistant commissioner of said Branch Bank. On the day after the sale, Whiting sold the slave to the defendant, Ware, for five hundred and fifty dollars, being an advance upon the price at which he had bid him in, and which sale was private; Ware agreeing to give his note to the bank on account of which the sale was made, after the sale; but on the same day, Ware came to Whiting and said that the boy was unsound, having a defect in one eye, to which Whiting replied, he expected this was not so, as Benbow said he was sound, and nothing was the matter with him. That upon an examination, they found one of his eyes defective, but Ware nevertheless did not object to him, or to complying with his contract. About two weeks afterwards, however, Ware called on Whiting, and said he would not comply, because he was told by one of his negroes that the boy had had a fit, and he had learned was subject to them, and that Benbow had told him the slave was subject to spasms when he had eaten any thing that disagreed with him; that although Benbow thought they were spasms occasioned from eating, he, Ware, thought they were fits, and that the negro was unsound therefrom, and asked Whiting to rescind the contract, which he refused to do. Thereupon, Ware tendered the negro back to Whiting, calling upon a witness to notice the tender, and demanded a rescision, which Whiting refused. On the first Monday in March, 1849, Ware again called on Whiting in regard to the negro, and desired him to rescind the contract, which Whiting says he refused to do, unless the arrangement hereafter to be stated amounted to such rescision.

In the interview last alluded to, Ware said the difficulty could be settled, if the bank would take back the negro and sell him, and Ware would pay the difference between the price he was to pay, and the price the slave should sell for. This Whiting refused to do. Ware then said, if Whiting would sell the

negro that day as the property of Benbow, under the mortgage, he would make up the difference, to which Whiting assented, and Ware requested him to write a note to Messrs. Lea & Norton, auctioneers, to sell the negro accordingly. Whiting asked if it was to be announced when the negro was offered for sale, that he was unsound. Ware replied, "no; say nothing about that, but to be sold without warranty." Whiting then commenced writing the note to Lea & Norton in this form. "Doctor Ware wished the negro sold" &c.; but Ware told him not to use his name, but his own, Whiting's; thereupon, the note was so written, and the negro sold at auction, and was purchased by Gilmer at $550 cash.

The auctioneer had an indistinct recollection that he announced when selling, that he had previously sold the same slave, but the witnesses who were present did not recollect that such declaration was made. It appeared, however, he was sold without warranty, not stating whether of title or soundness.

The evidence further showed that all sales made under mortgages to the bank were without warranty. Ware was present at the sale, and procured a person to bid against the other bidders, who at his request bid $540, and then ceased bidding.

It was also in evidence, that after the sale to Gilmer, the negro was delivered to him, and when he came to pay the money, Whiting said to him, that he was sorry he, Gilmer, had bought the negro, and then disclosed to him the previous sale, and all that had passed between him and Ware in regard to the unsoundness of the negro. Gilmer replied, that he supposed he had been buying at his own risk, and also said, that if what Benbow had said was true, the negro was a cheap bargain, and if what Ware said was true, he would send the negro up to some of the negro traders in Montgomery, and get them to sell him; and he then paid the money to Whiting.

It was proved that Ware was a physician; but there was no other evidence of his knowledge of the unsoundness of the slave than is above set forth. It was also shown that if the negro had been sound when sold to Gilmer, he would have been worth $700; that he was subject at that time to fits or spasms, which attacked him periodically, and deteriorated from his value, and that on the 27th day of March, 1849, Gilmer tendered the negro back to Ware, on account of such unsoundness.

The court charged the jury, that if they believed from the evidence that the bank sold the slave under the mortgage, and that Whiting as the agent of the bank purchased him, and afterwards sold him by private sale to Ware, and that Ware carried the negro back to Whiting, and refused to execute his note for the purchase money, because the negro was unsound, that although Ware might have proposed to rescind the contract, and Whiting refused, still, if in order to settle the difficulty, it was agreed that the negro should be sold again under the mortgage of Benbow to the bank, and Ware was to pay any difference if there should be any, between what he agreed to pay originally, and what the negro might sell for on a re-sale, it was a rescision of the contract on condition; and if the agreement was carried into effect, it was a rescision.

This charge, we think, cannot be supported as a legal proposition. It is very certain that Whiting refused to exonerate Ware from the obligation of the contract to pay $550, and this was the only portion of the contract which remained executory, as the negro had been delivered to Ware, and the contract fully executed by the bank. It is not pretended that Ware was in any wise discharged from his liability to pay the entire purchase money; but on the contrary, his liability remained wholly unimpaired by the subsequent arrangement between him and Whiting. The legal effect of this subsequent arrangement as it is disclosed by the proof, was not the cancellation of the prior contract, but it merely afforded Ware the opportunity of having the slave sold, perhaps for a better price than he could otherwise have sold him. In other words, it was a lending of the name of the bank by Whiting to effect a sale of the slave under the mortgage of Benbow for the benefit of Ware. As an illustration of this proposition, suppose the slave had sold for a mere nominal sum; Ware would still have been bound to pay the price originally agreed on. Suppose that after the arrangement for his re-sale, and before it could be affected, the slave had died, it is clear, the loss would have fallen on Ware, and not on Whiting or the bank. The re-sale was then to be at Ware's risk, the proceeds were to be applied for his benefit, and he alone was the party interested really and beneficially in the subsequent sale. We must look to the nature and substance of the transaction, to determine its true character, and not to the

mere formula employed to carry it out; and thus regarding, we cannot hesitate to pronounce that Doctor Ware was the principal in this sale ; that the negro when sold, belonged to him; and that the mortgage was merely employed as an instrument under which to affect a more favorable sale. Consequently, that such arrangement, though consummated, did not in law amount either to a conditional or absolute rescision of the contract. This conclusion seems so clearly to result from the facts stated, that we deem it unnecessary to cite an authority in support of it. It is quite certain that no case has been cited, which tends to establish the contrary proposition.

But it is contended, that although this charge may have been incorrect, yet when taken in connection with the whole of the evidence, no injury resulted from it to the plaintiff in error. The rule is, as we have often asserted it, that where the entire record affirmatively shows that the plaintiff below never can recover, and the matter which renders a recovery impracticable is obvious and undisputed, the court will not reverse for other errors. A reversal in such case would not only be useless, but become the means of unnecessarily agumenting the costs.— Brook v. Young, 4 Ala. R. 584 ; Marshall v. Betner, 17 ib. 832. Were we to concede, that the facts set out in this bill of exceptions show that the plaintiff ought not to have recovered, yet we must go farther, and presume what the bill of exceptions does not show, that the facts before us were all that were proved in the cause upon the trial below, and are all that can be proved upon a subsequent trial.

Without entering into a particular examination of the other charge which the court gave, and the charge prayed for by the counsel for the plaintiff and refused, it will be sufficient for the future conduct of the cause to state the law as applicable to them.

We think it too clear to admit of argument, that if before the contract was consummated by Gilmer, by the payment of the price to Whiting, the latter informed him of the facts and circumstances which he now insists constitute a fraud upon him, and he nevertheless elected to consummate the contract, and paid the purchase money, such circumstances must be considered as though they had been known to him at the time of his purchase, and the deceit which they tend to establish regarded as

an agreed fact of the case.—See Story on Con. p. 44, § 497 ; Campbell v. Fleming, 1 Ad. & E. 40; Selway v. Fogg, 5 Mees. & Wels. 81 ; Chitty on Con. 634. If the contract had been consummated by Gilmer before a discovery of the fraud, he might have sued for the deceit according to some of the cases, without any offer to rescind the contract; but the facts of this record do not raise this question. Here, there was a sale for cash ; the property had been bid off at auction, but the price was not paid, and before the payment the purchaser is advised of the circumstances affecting the soundness of the property, and with this knowledge, elects to proceed with the contract, deeming it perhaps a good bargain, and consummates the same by the payment of the money. Under such circumstances he cannot be said to have been defrauded, since his conduct amounts to a distinct admission that he was not deceived, and the circumstances of the alleged deceit or fraud become incorporated into, and form part of his purchase, which he concludes or consummates with a knowledge of them.

It results from what we have said, that the second charge given, when construed in connection with the evidence, was correct, and the charge refused, being substantially the reverse of that given, was properly rejected.

For the error in giving the first charge, the judgment must be reversed, and the cause remanded.