# Eagan Company *v.* Johnson.

*Action on Note given for Price of Machinery Sold.*

1. *Defects in article sold; rights and remedies of purchaser.*—Under an executory contract for the sale of a manufactured article, or other personal property, if the article delivered does not conform to the stipula-

82  233
105  245
89  233
115  375
82  233
120  614
82  233
133  586
82  233
e138  180

[Eagan Company v. Johnson.]

tions, or is defective or imperfect in any particular, this is a complete defense to an action to recover the agreed price, unless the purchaser has waived it; and though he may have waived his right to rescind, or to resist the payment of the entire agreed price, he may yet claim an abatement on account of the defect or imperfections, when he has made a partial payment in advance, and can not claim a rescission because he has used or sold the article.

2. *Same; waiver.*—If the purchaser, after discovering the defects or imperfections of the article delivered, uses or sells it, this would estop him from claiming a rescission, but not from claiming an abatement of the purchase-money; nor would he be estopped from claiming such abatement, by a promise to "make a payment as soon as possible," made after discovering the defects, or after using and selling the article.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. WM. E. CLARKE.

This action was brought by the Eagan Company, a private corporation organized under the laws of Tennessee, against W. G. and L. W. Johnson; was commenced on the 12th September, 1885, and was founded on the defendants' promissory note for $275, which was dated at Chattanooga, Tennessee, November 1st, 1884, payable January 1st, 1885, to the order of the Kirk Machine Company, by whom it was transferred to the plaintiff, and contained a stipulation in these words : "This note is executed in consideration of an agreement by me to purchase of the said Kirk Machine Company one number six (6) double-surfacer, extra heavy, with countershafts ; and it is expressly understood and agreed that the title to the same is reserved, and shall remain and continue in the said Kirk Machine Company until this note is paid." The complaint contained a special count on the note, and the common counts, to which the defendants pleaded the general issue ; and the trial resulted, under the rulings of the court, in a verdict and judgment for the defendants.

On the trial, as the bill of exceptions shows, it was proved that the defendants went to Chattanooga, in September, 1884, for the purpose of buying or ordering a planing-machine, and visited the office or shops of the Kirk Machine Company at that place; that this company was engaged in business on its own account, and also acted as agent for the plaintiff company in the sale of the machines and other articles manufactured by it; that the defendants wanted a "double-cylinder planing machine, and would buy none other, and ordered of plaintiff, through said Kirk, a No. 4 machine, described in plaintiff's printed catalogue, as a 'Double-cylinder Excelsior Planer and Matcher, planes 24 in. wide, both sides, 4 in. thick ;' that the order was afterwards, during the same day, changed to a No. 5 machine;" that when this order reached plaintiff, not then be-

ing able to supply a machine of that number, plaintiff wrote to defendants, and advised the purchase of a No. 6 in its stead; and that defendant W. G. Johnson replied by letter, "I will take Planer No. 6, as per your catalogue, for $775; . . the machine to be shipped by 15th October." The machine was forwarded by plaintiff to Chattanooga, defendants being informed of its shipment; and W. G. Johnson, the principal, for whom L. W. Johnson was surety, at once sent the money and note, as per the terms of the contract, to the Kirk Machine Company. When the machine reached Coaling, where the defendants were¹ engaged in business, and was put up for use, they discovered that it was not a "double-surfacer;" and W. G. Johnson thereupon wrote to Kirk, at Chattanooga, on the 9th November, 1884, saying : "The planer has come to hand at last, and in some respects I am well pleased with the machine. But I purchased from you a double-surfacer, and this machine has but one cylinder. The machine was made 'for a double-surfacer, but the lower cylinder has been taken off. I would be glad to hear your explanation of this." To this letter Kirk replied, November 11th, as follows : "We, too, were of the opinion that your planer was double-cylinder; but, on examining the catalogue of Eagan & Co., we find that No. 4 is double-cylinder, but Nos. 5 and 6 are single cylinders. We have written them to know what will be the extra cost to put on another cylinder;" and again. he wrote on the 14th, offering to put in another cylinder, with necessary connections, for $140. On the 31st December, 1884, W. G. Johnson wrote to the Kirk Machine Company, saying : "I have been unable to do any business in the way of shipments during this month, as I could not get transportation from this road. Consequently, am unable to make a payment on planer now, *but will do so as soon as possible.* I hope you will appreciate my condition, and act liberal with me. I will do all in my power to accommodate you." And again, on the 11th March, 1885, he wrote to said Kirk : "The machine I bought of you was turned over to my brother, L. W. Johnson. I only hold it bound for the money I paid on it. My brother says it failed to come up to the contract, being only a single-surfacer when we contracted for a double-surfacer. He says, if a proper deduction is made on our note, he will settle the balance very soon; but, as the manufacturer wants $140 to make it a double-surfacer, he, of course, expects a deduction of some amount from our note.

The plaintiff asked the following charges to the jury, in writing : (1.) "If the jury believe, from the evidence, that

[Eagan Company v. Johnson.]

the machine in question was bought by W. G. Johnson, and that he sold it to L. W. Johnson; then this is such an unmistakable act of ownership, that they may hold it to be an acceptance and ratification of the contract." (2.) "If the jury believe, from the evidence, that some objection was made to the said machine when it was first received, but that the defendant afterwards wrote to plaintiff, or his agent, asking for indulgence in the payment of said note, but promising to pay therefor as soon as possible; then this would be such a ratification of the contract as to authorize the jury to hold the defendants liable in this case." (3.) "Although, when a vendee receives property on which he has made a payment, and it is discovered that the property is not exactly what was ordered, he has a right to retain the same, to make himself whole; yet he must not put it to such use as will prevent its return, if demanded, nor retain and use it, at such place, and in such manner as to depreciate its value." The court refused each of these charges, and the plaintiff excepted to their refusal; and the refusal of each is now assigned as error.

WOOD & WOOD, for the appellant, cited the following authorities: As to the first charge asked and refused, 1 Benjamin on Sales, 168-9; *Barnett v. Stanton*, 2 Ala. 181-9; *Phillips v. Ocmulgee Mills*, 55 Geo. 633; *Marshall v. Ferguson*, 23 Cal. 66. As to the second charge, *Burnett v. Stanton*, 2 Ala. 189; *Jemison v. Woodruff*, 34 Ala. 143; *Grimaldi v. White*, 4 Esp. 94; 1 Parsons Contr. 593; Bish. Contr., § 206. As to the third charge, 1 Sedgw. Dam. 586.

STONE, C. J.—For the purposes of this appeal, we may test the case made by the record as a contract of sale to Johnson by the Eagan Company, of a piece of machinery manufactured by the latter. The defense is, that the machinery was less complete, and therefore less serviceable, than the machinery contracted for would have been. No intentional wrong is, or can be imputed to the manufacturer. The imperfection which gave rise to this contention, must be ascribed to the oversight and mistake of plaintiff's agent, the Kirk Machine Company, through which the sale was negotiated. That both Johnson and the Kirk Machine Company were under a mutual mistake as to what the machine should be capable of doing, is proved beyond contention. That the Eagan Company was ignorant of this mistake, we have no authority for questioning. The note, however, on which the action is founded, stipulates that the machine for which it was given (a planing-machine) should be what

is known as a "double-surfacer;" that is, that it should plane the two surfaces, bottom and top, at one and the same time. The machine sent planed but one surface, and cost at the shops about one hundred and forty or fifty dollars less than a double-surfacer of like dimensions would cost. This suit, we have said, is founded on this note; and however innocent the Eagan Company may have been of intentional wrong, they are bound by the stipulations in the note.

When, in making an executory contract of sale of personal property, fraud is perpetrated to the injury of the purchaser; or whenever there is a warranty, express or implied, which has been broken; or when the article tendered in performance of such executory agreement does not conform to the stipulations,—either of these furnishes ground of defense to any suit by the seller, brought for the enforcement of such contract. This defense, however, the purchaser may waive, and does waive, if, after learning the facts, he executes the contract on his part, or does any other act inconsistent with his right to make the defense. *Barnett v. Stanton,* 2 Ala. 181, 189; Benj. on Sales, § 144; 1 Pars. on Contr. 591-2; *Grinaldi v. White,* 4 Esp. 95; *Phillips v. Ocmulgee Mils,* 55 Ga. 633.

Early in November, 1884, Johnson received the planing-machine, immediately detected its incompleteness as a double-surfacer, and informed the Kirk Machine Company of it. Some correspondence ensued in regard to it, in which the Eagan Company took part. No conclusion or adjustment was reached, and the machine was neither tendered back, nor demanded. Johnson put the machine to use, and in March sold it to his brother, who was his surety on the note for the unpaid purchase-money.

The note on which the action is founded is made payable at a bank in Chattanooga, Tennessee, and matured January 1, 1885. On December 31st, 1884, Johnson wrote to the Kirk Machine Company, saying: "I have been unable to do any business in the way of shipments during the month. . . Am unable to make a payment on planer now, *but will do so as soon as possible.* I hope you will appeciate my condition, and act liberal(ly) with me. I will do all in my power to accommodate you." The italics are Johnson's. The present suit was brought in September, 1885.

It is contended for appellant, that the promise contained in the letter of December 31, 1884, and the sale of the planing-machine by Johnson made in March, 1885, were severally and collectively a ratification of the sale, and justified the jury in disallowing the defense set up. The sale evi-

dently estopped the defendant from tendering the machine back, and claiming a rescission. Use of the machine had, perhaps, done that. Did this conduct, as matter of law, cut off all defense by way of recoupment?—*Snow v. Schomacker*, 69 Ala. 111. In *Jemison v. Woodruff*, 34 Ala. 143, this court said : "Unless there was a rescission of the sale, or unless the article purchased was valueless; the purchaser could not resist the payment of the entire purchase-money of the defective article. His defense, while he retains the article purchased, extends only to an abatement of the price agreed to be paid."—*Gilmer v. Ware*, 19 Ala. 252 ; *Merriwether v. Taylor*, 15 Ala. 735 ; *McGar v. Williams*, 26 Ala. 469 ; *Thomas v. Ellis*, 4 Ala. 108 ; *Hunter v. Waldron*, 7 Ala. 553 ; *Brown v. Freeman*, 79 Ala. 406.

Under our rulings, in a case like the present, the purchaser may rescind, by refusing to accept the article tendered. To do so, he must assert no ownership or control of the property, inconsistent with the seller's rights as owner ; and, if he has acquired possession, he must tender it back within a reasonable time, unconditionally, if he has made no payment. If he has made payment, total or partial, he may qualify the tender back, by a retention of possession until restitution is made. For this purpose, and to this extent, the law allows him to retain the possession as a security. He is not required, however, to demand a rescission. He may keep the property, and claim damages for the imperfection or deficiency, either by way of recoupment, or by separate action, if necessary or advisable.

If the right to rescind was the only remedial defense the law left open to Johnson, then the three charges asked by plaintiff should each have been given. They are not compatible, however, with that other line of defense which we have shown he was authorized to make ; and the Circuit Court, in refusing to give each and all of them, committed no error.

Affirmed.