PAGE & COMPANY *v.* DODSON PRINTERS' SUPPLY
COMPANY *et al.*

106   77
L115 373

1. The failure of the commissioners to insert their names in a blank commission to examine a witness does not render the execution of the commission invalid, if it appears in the return who the commissioners were.
2. There was no error in the ruling complained of as to the admissibility of evidence. The charges complained of, when taken in connection with the entire charge, were not erroneous. The evidence, though conflicting, was amply sufficient to authorize the verdict, and there was no error in overruling the motion for a new trial.

Argued October 20, — Decided November 26, 1898.

Equitable petition. Before Judge Butt. Muscogee superior court. May term, 1898.

*C. J. Thornton, J. H. Worrill* and *A. E. Thornton*, for plaintiffs in error. *W. A. Wimbish* and *E. D. Burts*, contra.

Cobb, J. On September 25, 1897, the Dodson Printers' Supply Company brought its petition to the superior court of Muscogee county against R. W. Page & Company, alleging, in substance, that on December 10, 1896, it leased to the defendants for a term of two and one half years two Thorne typesetting-machines for $300 per annum each, for which defendants, besides making a cash payment of $200, gave promissory notes to the plaintiff for $200 each, payable respectively, April 10, August 10, and December 10, 1897, April 10, August 10, and December 10, 1898, and April 10, 1899, all of which notes, except the first, had been transferred to the American Type-Founders Company, Branch D, and by it to Henry Barth, who had brought suit in the city court of Columbus upon the note due August 10, 1897, which the defendants had refused to pay; that the defendants had violated certain stipulations of the contract of lease requiring them to operate the machines and maintain them in good operative condition and repair and have them cared for

by a competent person; and that they were about to remove the machines from their place of business. The plaintiff prayed for an injunction to restrain the defendants from removing the machines, and for damages on account of the alleged breach of contract. The defendants filed an answer in the nature of a cross-petition, in which they set up that they were induced to enter into the contract by reason of representations on the part of the plaintiff, upon which they relied, to the effect that the machines were in perfect condition, easily managed, and would consume but a small amount of type, which representations were false and fraudulent, and that they were thereby damaged to the extent of $1,000, which they asked to recoup. They averred that the transfers of the notes were fictitious, and made with the intention on the part of the plaintiff and the transferees of barring the defendants from setting up a legal defense to the notes. They prayed that the suit in the city court be enjoined, that the notes be declared void, and for general relief. Barth, who was made a party defendant to the cross-petition, answered that he obtained the notes in good faith and for value, before maturity; and he prayed judgment in his favor against the defendants for the amount due thereon. Upon the trial the evidence was conflicting upon nearly all of the material issues in the case. There was evidence which tended to establish that the negotiations which finally resulted in the contract sued on began in August or September, 1896, and continued for several months; that R. W. Page of the firm of R. W. Page & Company, about November 20, 1896, saw the machines in operation once or twice in Atlanta, and was given ample opportunity both as to time and otherwise to satisfy himself as to the character of the machines and as to the representations made, if any had been made; that the machines arrived in Columbus about November 26, and were placed in position in the office of Page & Company, and not until the lapse of ten or twelve days, during which time the machines were in operation in the office of Page & Company under their immediate supervision and subject to inspection by them, was the contract sued on finally executed. The contract bears date December 10, 1897. The evidence as to when Page first expressed dissatisfaction with the machines is

conflicting. Page & Company contended that they expressed their dissatisfaction about January, 1897, and plaintiffs contended that the dissatisfaction was not expressed to them until about June 7, 1897. The evidence showed that the note due April 10 was paid. R. W. Page testified: "I have ceased to use the machines, because I could not get the results out of them at all. I notified Mr. Johnson, if I remember correctly, on the 10th day of June, 1897. I had paid for the time I used them to June 10. I offered to Mr. Johnson the machines, asked him where they wanted them, and went to Atlanta. Johnson was out of the city. A Mr. Hill, one of the office men, said Mr. Johnson was the machine man and would make everything all right. I told him I was willing to do what was right, but that I could not use the machines. . . I made a cash payment that carried us to April 10, and made another in April, and another in May, and another in June, and stopped, when I had paid up to the time I used one [machine] up to the 10th of July, and the other one had gotten so bad I quit using it two or three weeks before." There was evidence authorizing the jury to find that the machines had been unnecessarily damaged by the way in which Page & Company had used them, and that to put them in proper repair would involve an expense of several hundred dollars. The jury returned a verdict in favor of Barth for six hundred dollars, with interest, the amount of three of the notes held by him, and in favor of the Dodson Printers' Supply Company for seventy-five dollars, "damages on machines." Page & Company moved for a new trial, which was denied, and they excepted.

1. Several witnesses were examined in behalf of the plaintiffs, by interrogatories executed under a commission. Objection was made to the reading of the answers of these witnesses, on the ground that "no commissioners were named in the commission to take the interrogatories, or as having taken them." In the case of *Jordan* v. *Rivers*, 20 *Ga.* 108, a similar question was involved, and Judge Benning in his opinion uses this language: "We think, then, that the insertion of the commissioners' names in the blank in the commission annexed to interrogatories is not indispensable to the validity of an execution

of the commission. The only object there can be for such insertion is that of informing the court who it is that have executed its commission. And this is an object which may be accomplished in other ways: as, by a statement or indication in the caption of the return, or in the conclusion and signatures of the return." In the absence of a statement to the contrary in the motion for a new trial, it will be presumed that the return indicates the names of the commissioners who actually executed the commission, either by having them set out in the caption or by their signatures to the return. There was no error in allowing the answers to the interrogatories to be read.

2. The motion for a new trial contains numerous exceptions, some referring to the admission of evidence and others to the charge of the judge. None of the alleged errors are, in our opinion, sufficient to require the granting of a new trial. When those parts of the charge which are the subject of exception are read in connection with the entire charge, there does not seem to be any material error. In fact, taking the charge as a whole, the case was fairly submitted to the jury on all of the material issues involved. There was ample evidence to sustain the verdict. The jury were warranted in finding that Page & Company had, before the making of the contract, ample opportunity to inspect, and did in fact inspect, the machines, and knew of, or could by the exercise of ordinary diligence have discovered, the defects of which they afterwards complained; and that notwithstanding this they executed the contract and made payments thereunder; and that even if it was true that they did not discover until after the execution of the contract that a fraud had been perpetrated upon them, if any had in fact been perpetrated, they did not upon such discovery make prompt offer to rescind, but on the other hand made payments under the contract. If these things were true, a verdict against Page & Company was a necessary result under the issues made in the case. See *American Car Co.* v. *Atlanta Street Railway Co.*, 100 *Ga.* 254, and cases cited; *Lunsford* v. *Malsby*, 101 *Ga.* 39.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*