## TUTTLE *v.* STOVALL.

Where, on June 3, 1908, one was induced to enter into a contract for the purchase of personalty by reason of the fraud of the owner, paying the latter $700 cash and giving notes for the balance of the purchase-money, and, on September 5, 1908, paid one of such notes for $500 then due, and, on January 8, 1909, paid $200 on another of the notes for $500 due on January 5, 1909, and at the time took from such owner a writing signed by the latter, wherein he agreed to indulge the buyer for 30 days within which to pay the balance of $300 due on such note: *Held,* that the conduct of the buyer in making the payments and taking from the seller the writing dated January 8, 1909, with full knowledge at the time of the fraud of the seller in the procurement of the notes, amounted to a waiver of such fraud, and the buyer could not prevent a collection of the balance due on the note due January 5, 1909, and of the amounts due on the other notes, because of any damages sustained by the buyer on account of such fraud.

APRIL 15, 1910.

Injunction.    Before Judge Ellis.    Fulton superior court.    July 12, 1909.

*W. C. Munday* and *Hines & Jordan,* for plaintiff in error.

*T. C. Battle* and *Heyward & Garrett,* contra.

HOLDEN, J. On March 18, 1909, Mrs. Stovall, the defendant in error, filed her petition for an injunction, making amongst others, substantially the following allegations: On June 3, 1908, she bought from J. N. Tuttle, the plaintiff in error, for the price of $2,125, certain furniture and other personalty owned by the latter and located in a certain hotel or boarding-house and used by him in the operation thereof. The contract was in writing. Title to the property was reserved in the vendor until the purchase-money was paid. The vendee paid $700 cash and gave notes for the balance of the purchase-money. One note was for $500 due September 5, 1908. Another was for $500 due January 5, 1909, and other notes, except one for $25, were for $50 each, payable monthly. Mrs. Stovall paid the note due September 5, 1908, on or about the time of its maturity, and on January 8, 1909, paid $200 on the note due January 5, 1909. At the time of the purchase the defendant represented, that the gross receipts of the hotel business were $600 to $700 per month, and the net profit from $100 to $150 per month; that there were 24 regular boarders who paid from $5 to $6 per week; that he kept no books, but the representations made were true; that the furniture and other equipment for the business were worth fully $2,500; and that the business was in a successful and prosperous condition. These representations were false and were made for the purpose of deceiving, and did deceive the plaintiff and induce her to make the trade. She thought at the time $2,125 was an excessive price for the furniture, "but was induced to pay said sum in order to obtain said business." The furniture was not worth over $800. Tuttle has brought suit for $300 principal on the note due January 5, 1909, and on one of the·notes for $50, and has had garnishments served on her boarders, and threatens to bring suit on the other notes. Unless the pending and threatened suits are enjoined, her business will be destroyed, and she will be involved in a multiplicity of suits by Tuttle, who is insolvent. In addition to the prayer for an injunction of the suits and garnishments, she asked that the defendant be required to surrender the unpaid notes into court for ·cancellation as void. To the order of the court granting an interlocutory injunction the defendant excepted.

1. The written contract evidencing the sale of the personalty used in the operation of the hotel was dated June 3, 1908. $700

of the purchase-price of $2,125 was paid cash, and notes given for the balance. The note for $500 due September 5, 1908, was paid, and on January 8, 1909, $200 was paid on the note for $500 due January 5, 1909. Mrs. Stovall, in her petition to enjoin the collection of the unpaid notes, and for other purposes, alleges that she has paid more than the value of the personalty bought, which she claims was only worth $800. The false representations which she alleges Tuttle made to deceive her and which did induce her to enter into the contract were that the gross receipts of the hotel business were between $600 and $700 per month and the net profits were from $100 to $150 per month; and she alleges that she requested the privilege of examining the books of the hotel in order to verify the representations made to her, whereupon Tuttle represented to her that he kept no books, but that all his statements and representations were true; and further, that Tuttle told her there were 24 regular boarders paying from $5 to $6 per week, whereas she discovered at the time of taking possession of the hotel that there were only 17 boarders, who were paying from $4 to $6 each per week. In the petition she alleges that she went into possession of the property the day the trade was made, on June 3, 1908, and "soon" found that all the alleged representations made by Tuttle, in regard to the gross receipts and net profits of the business, the number of boarders and rates they were paying, were false. She and her husband also made affidavit to this effect. The petition alleges that since the trade was made she discovered that Tuttle did keep books, which showed that the "gross receipts when said sale was made to petitioner did not exceed $400 per month, and that said business was then running at a loss of from $75 to $90 per month," but she does not allege the time when this discovery was made. On the hearing before the court, Mrs. Stovall in her affidavit states: "nor was she aware that there were any books kept of said hotel business until after she had been in possession of said property for more than two months." Pleadings are to be taken most strongly against the pleader, and the same rule applies to testimony given by a party in his own favor. For the purpose of determining the rights of the parties it is proper, therefore, to consider that when Mrs. Stovall paid Tuttle, on September 5, 1908, the note of $500 then due, which was more than three months from the time the trade was made, she then knew that all the represen-

tations which induced her to make the trade were false. The record shows that the defendant introduced in evidence a receipt produced by the plaintiff under notice, as follows: "Received of Mrs. M. E. Stovall two hundred dollars, part payment on five hundred dollars note, and agree to indulge her for thirty days to pay the balance on said note, this the 8th day of January, 1909. James N. Tuttle." Mrs. Stovall failed to pay the balance on the note referred to in this receipt, or any of the other notes; but on March 18, 1909, she filed her petition to enjoin any collection of them, claiming that she had paid more than the property was worth, and that by reason of the alleged fraud of Tuttle she should not be required to pay any more on the notes.

The suit filed by the plaintiff was not one to rescind the contract. In fact she alleges: "That she did not demand of the said Tuttle that he rescind the sale, as she had already paid the aforesaid amount and had been compelled to assume a lease on the said hotel building from another party, and because said Tuttle was and is insolvent." The plaintiff alleges that the unpaid notes are void; but there can be no rescission in part, nor can there be rescission without restoration, and it does not appear that any offer to restore has ever been made. The meaning of the petition is that the property purchased was only worth $800, and that she has paid more than this amount, and that by reason of the fraud of the defendant she has been damaged more than the balance due on the unpaid notes the collection of which she seeks to enjoin. She could not recover damages because of the alleged false representations of Tuttle that the personalty purchased was worth more than she agreed to pay for the same, because of the allegation in the petition that she thought at the time that $2,125 was an excessive price, and the fact disclosed by the record that she thoroughly examined the property before giving her notes for the purchase-money. If there was fraud in the contract for any other reason, she has waived the same. Where a vendee is induced to enter into a contract for the sale of personalty by the fraud of the vendor, when the former discovers the fraud he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud. 14 Am. & Eng. Enc. Law, 167; 20 Cyc. 87; *Wright* v. *Zeigler,* 70 *Ga.* 501 (5); *Bacon* v. *Moody,* 117 *Ga.* 207 (43 S. E. 482); *Hunt* v. *Hardwick,* 68 *Ga.* 100. When

a contract is entered into by a party by reason of the fraud of the other party, there is a difference in the rules of law relating to a waiver of the right of the defrauded party to sue for damages for the fraud when the contract is affirmed, and those relating to a waiver of the right to disaffirm the contract and rescind it; and some confusion has arisen in some of the decisions by reason of this difference not being kept in view.    Smith on Law of Fraud, § 137, p. 159, § 240, p. 258.    In order to exercise the right of rescission of a contract for fraud, the defrauded party must act promptly upon the discovery of the fraud, and must restore or offer to the other party whatever the former has received by virtue of the contract, if it is of any value.    Civil Code, § 3711; *Pearce* v. *Borg Company,* 111 *Ga.* 847 (36 S. E. 457) ; *Hunt* v. *Hardwick,* 68 *Ga.* 100.    Mere delay by the defrauded party to sue for damages for the fraud perpetrated on him whereby he was induced to enter into the contract, which the former does not seek to rescind but affirms, will not necessarily operate as a waiver of the right to sue for such damages, when the delay is not beyond the time when the action would be barred by the statute of limitations.    A suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract, and he may keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud.    20 Cyc. 91; 1 Bigelow on Fraud, 66.    It can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm the contract and the right to sue for damages for the fraud coexist. While the defrauded party may affirm the contract and sue for damages for the fraud, this right of affirmance, with a saving of the right to sue for damages, has its limitations, in that the defrauded party, in order to preserve his right to sue for damages for the fraud, must do no act in affirming the contract, or otherwise, which waives the fraud.    If the defrauded party, with knowledge of the fraud, does an act in ratifying or affirming the contract which shows his intention to abide by the contract as made, with the fraud in it, and thus waives the fraud, he can not afterwards set up the fraud and recover damages therefor.    The question as to whether the defrauded party has waived the fraud is one mainly of intent.    14

Am. & Eng. Enc. Law, 169; 20 Cyc., 93; *Alabama Construction Co.* v. *Continental Car Co.,* 131 *Ga.* 365, 371 (62 S. E. 160). In 14 Am. & Eng. Enc. Law, 171, it is said: "The rule that affirmance of a contract with knowledge of fraud does not bar an action for damages is subject to the limitations, that the party defrauded must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it.   If he does so, he waives the fraud. But the right to recover damages for fraud is not necessarily barred merely because the party defrauded had other dealings with the party defrauding after discovery of the fraud." In Schmidt *v.* Mesmer, 116 Cal. 267 (48 Pac. 54), it was ruled: "A cause of action for damages for fraud of the defendant, in misrepresenting the amount of income received monthly from a hotel leased by the defendant to the plaintiff, is waived where it appears that the defendant occupied the premises for about seventeen months after knowledge of the facts constituting the fraud, without making any complaint thereof or giving any intimation that any false representations had been made until suit was brought, and meanwhile had asked for a reduction of rent, and was permitted to, and did, give a note for unpaid rent, which he failed to pay at maturity."   In Blydenburgh *v.* Welsh, 1 Baldw. 331 (Fed. Cas. No. 1583), it was ruled: "If, after a party has acquired knowledge of facts tending to effect a contract with fraud, he offers to perform it on a condition which he has no right to exact, he thereby waives the fraud and can not set it up in an action on the contract."   In Gilmer *v.* Ware, 19 Ala. 252, it was ruled: "When the purchaser of a slave sold at public auction pays the purchase-money after he has been informed of the slave's unsoundness, and of facts which would constitute a fraud in the sale, he can not afterwards recover damages in an action of deceit, on account of such unsoundness."   In Negley *v.* Lindsay, 67 Pa. 217 (5 Am. Rep. 427), it was ruled: "A contract tainted with fraud may be ratified without a new contract, founded on a new consideration."   In this connection, see also: Edwards *v.* Roberts, 7 S. & M. 544; Doherty *v.* Bell, 55 Ind. 205; Thompson *v.* Libby, 36 Minn. 287 (31 N. W. 52); Fitzpatrick *v.* Flannagan, 106 U. S. 648 (1 Sup. Ct. 369, 27 L. ed. 211); Kirtley *v.*

Holmes, 52 L. R. A. 745 (107 Fed. 1, 46 C. C. A. 102) ; Kingman v. Stoddard, 85 Fed. 740 (29 C. C. A. 413) ; Minnesota Thresher Mfg. Co. v. Gruben, 6 Kan. App. 665 (50 Pac. 67) ; McDonough v. Williams, 77 Ark. 261 (92 S. W. 783, 8 L. R. A. (N. S.) 452, 7 Am. & Eng. Ann. Cases, 276) ; People v. Stephens, 71 N. Y. 527 ; Saratoga &c. R. Co. v. Row, 24 Wend. (N. Y.) 74 (35 Am. Dec. 598) ; Barber v. Morgan (Tex.), 76 S. W. 319 ; Vernol v. Vernol, 63 N. Y. 45 ; 20 Cyc. 92 ; Cases cited in 23 Am. Dig. Title "Fraud," § 30, p. 1729 ; *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628 (28 S. E. 392) ; *Hunt* v. *Hardwick,* 68 *Ga.* 100, 104 ; *German &c. Ass'n* v. *Farley,* 102 *Ga.* 720 (29 S. E. 615) ; *Page & Co.* v. *Dodson Co.,* 106 *Ga.* 77, 80 (31 S. E. 804) ; *Estes* v. *Odom,* 91 *Ga.* 600 (18 S. E. 355). Fraud may be compromised or settled. *Ham* v. *Hamilton,* 29 *Ga.* 40 ; *Montgomery* v. *Morris,* 32 *Ga.* 173 ; *Bass* v. *Bass,* 73 *Ga.* 134. And the right of action for fraud may be waived as any other action. 14 Am. & Eng. Enc. Law, 169. If the purchaser of personalty give his note for the purchase-money therefor, with full knowledge at the time that the property is defective, he can not afterwards make any defense against the collection of the note because of such defects. *Means* v. *Subers,* 115 *Ga.* 371 (41 S. E. 633) ; *Lunsford* v. *Malsby,* 101 *Ga.* 39 (28 S. E. 496) ; *American Car Co.* v. *Railway Co.,* 100 *Ga.* 254 (28 S. E. 40) ; *Henderson Elevator Co.* v. *Milling Co.,* 126 *Ga.* 279 (55 S. E. 50).

Conceding that Mrs. Stovall was induced to enter into the contract by reason of fraud perpetrated upon her by Tuttle, we think by her conduct she waived the fraud and could not set the same up to recover damages against Tuttle at the time she filed her petition. With knowledge that the representations were false, she paid one of the purchase-money notes for $500 on September 5, 1908, and on January 8, 1909, she paid $200 on another note due January 5, 1909, and took from Tuttle a writing signed by him acknowledging receipt of the $200 and agreeing "to indulge her for thirty days to pay the balance of the note." With full knowledge of the fraud, and thereafter paying $200 and obtaining from the vendor a writing signed by him agreeing to give her thirty days within which to pay the balance due on the matured note, she claims she is not due the balance on this note on account of the fraud of Tuttle which induced her to sign it. By this conduct she waived the alleged fraud, and can not now set it up to prevent the collection of the

note.    If she waived the fraud in regard to the balance due on this note, she waived it as to all the other notes, as the alleged fraud related to one note as well as the other.    She seeks to prevent the collection of the balance due on this note, as well as to prevent the collection of the other notes.    When, with knowledge that the representations inducing her to give the notes were false, she induced the vendor, by paying him $200, to agree to give her more time than she had under the original contract to pay the balance, she condoned the fraud.    After the discovery of the fraud, she should not have treated the contract as a valid one and procured favors from the other party with respect thereto, without her conduct being construed as an acquiescence in the contract as made with the fraud in it.    By her conduct in thus dealing with the opposite party she recognized the contract as one that was valid and enforceable against her in its entirety.    By making the payments and obtaining from the other party a writing wherein he promised to wait on her for payments longer than was stipulated in the original contract, she made an admission that the contract was valid which is inconsistent with her statements that it was tainted with fraud. She impliedly promised to pay the balance of the note at the expiration of the thirty days, and she distinctly recognized her liability on the note, which is inconsistent with the idea that she was not liable for such balance because of fraud in the procurement of the note forming part of the contract.    If she did not owe the balance of this note and did not expect to pay it, she should not have dealt with it as if she did owe it, and should not have procured the other party to agree to something not in the original contract and induced him to believe that she did not consider that there was any fraud in the contract, or, if there was, that she would make no defense to the collection on that ground.    To do this, and then to avoid payment of the balance of the note, would be a fraud on the other party; and one fraud will not justify another fraud. Her payment of $200, and the obtaining from the other party a writing wherein he promised to give her time beyond that provided for in the original contract, was in contradiction of her purpose to sue for damages for fraud in the procurement of the notes; and if there was fraud in the contract, this conduct was an adoption of it as it existed with the fraud in it.    By her conduct she condoned the fraud, and, like the ratification of the unauthorized acts of an

agent, such conduct relates to the time of the formation of the contract, confirming it from its date and purging it of its fraud.

The court committed error in granting the injunction.

*Judgment reversed. All the Justices concur.*