GENERAL MOTORS ACCEPTANCE CORPORATION *v.* COGGINS.

644

*Harry S. McCowen,* for plaintiff.   *Eldon Haldane,* for defendant.

PER CURIAM.   It is clear from the question asked by the Court of Appeals that the vendor of certain personal property brought a suit in trover and recovered the property by means of a judgment in trover.   It is manifest from the question that the vendor had "reserved title thereto in himself until payment of the purchase-price," and the question shows that the contract retaining title contains a further and additional provision that the vendor "may retake the property without demand and resell it at public or private sale and credit the proceeds of the sale on the amount due by the purchaser," even before the maturity of any portion of the purchase-price, if the vendor "deems the property in danger of misuse

or confiscation." The Court of Appeals finally inquires whether in these circumstances, if the vendor institutes an action in trover, and thereby obtains possession of the property, and thereafter sells the same at private sale, giving the purchaser credit for the proceeds of the sale on the purchase-money due by him, the usual rule as to rescission applicable to proceedings in trover is applicable. This we construe to mean that the Court of Appeals wishes to know whether the purchaser of the personal property would be entitled to have restored to him the amount paid by him upon the purchase, less the hire and any damage or depreciation in the value of the personalty. We are of the opinion that the question of the Court of Appeals should be answered in the affirmative. In one portion of the contract referred to by the question the vendor retains title in himself, and under all of the authorities would be entitled to proceed by trover to recover possession of the property in case of the vendee's breach of any provision in the contract of sale. In another portion of the question it is stated that there is also a provision by which the vendor can himself take possession in the circumstances already stated. This does not require any judicial proceeding; for this provision, properly construed, is an agreement on the part of the purchaser to leave it entirely to the discretion of the vendor as to whether the property is in "danger of misuse or confiscation," and at the same time relieves the vendee from the drastic incidents which may attach to him in the proceeding of bail trover.

The question of the Court of Appeals is controlled by the decisions of this court as to the doctrine of election of remedies. The contract to which the question of the Court of Appeals refers gives the vendor of the personalty either of two methods of safeguarding his title in the article to which he seeks to retain title. He may either proceed by trover, or he, or any agent of his apparently, may retake the property without let or hindrance, if in his judgment there is "danger of misuse or confiscation." It is clear from the question that he can not do both, nor can he mingle the two proceedings. There is no provision in the contract for obtaining possession of the property by trover and thereafter selling the property at private sale, because a private contract will not be permitted to vary the law of procedure in an action of trover, or any other action provided by law. The proceedings in an action at law must be as prescribed by law. The purchaser of personal property may by con-

tract restrict his own rights, or waive rights to which he is by law entitled, as is apparently the case in the provision of the contract last referred to in the question. But if a vendor, despite the right which has been voluntarily conferred by the vendee of retaking the property without legal process if it be in danger of misuse or confiscation, elects to proceed by trover, he can not prescribe or achieve a different result from that prescribed by law. In the question as asked by the Court of Appeals, the vendor had the right to retake the property without taking out trover; and in this event the value arising upon a sale, or any other disposition of the personalty, would be determined in accordance with the contract. If, however, the property be taken by trover, in accordance with the law governing the first provision of the contract, a rescission must result. There can be no proceeding by trover for the mere purpose of gaining possession of the property, as indicated by the question. The question says there was a judgment in the action in trover (thereunder). If so, that judgment, until set aside, is conclusive, without any reference to the second provision in the contract, for the reason that the vendor elected to proceed in trover; and he can not, after instituting the action in trover, adopt the alternative provision contained in his contract. One can not eat his pie and keep it too.

The Court of Appeals refers us to *Board of Education* v. *Day,* 128 *Ga.* 156 (supra), in which the doctrine of election between inconsistent remedies is discussed. In that case Mr. Justice Lumpkin, after citation of numerous authorities, said: "As to what is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedies, the authorities are not entirely agreed. It is quite clear that the prosecution of one remedial right to judgment or decree, whether such judgment or decree is for or against the plaintiff, will amount to such an act. 'By preponderance of authority, the mere commencement of any proceeding to enforce one remedial right, in a court having jurisdiction to entertain the same, is such a decisive act as constitutes a conclusive election. . .' 15 Cyc. 259-260. . . The doctrine of election of inconsistent remedies . . rests on a broader basis. Where one is in a situation in which he may elect between two inconsistent proceedings, the choice of the position which he will take must be made before bringing suit, or in doing so. He has no right to

bring either action except by selecting and determining to occupy a position consistent with that action and inconsistent with the other. If, with actual knowledge or notice of the substantial facts, he chooses the position which he will occupy, and which will authorize him to appeal to the courts for one of the remedies, and does in fact proceed in court to enforce such remedy, it would seem to be little short of trifling with judicial procedure to allow him at his mere option to change his mind, dismiss his suit, repudiate the position which he has thus solemnly taken, assume another directly inconsistent with it, and ask the courts to enforce a remedy based on his new election. If he may change his mind once after having assumed and thus declared his position and based his suit upon it, why may he not do so again? And where is the limitation upon decision and re-decision, selection and re-selection, and vacillation between inconsistent positions and remedies, as it may appear to the litigant from time to time that his chances are better in one direction or the other? Can he be allowed to swim hither and thither in a sea of legal uncertainty until he has been transfixed by the harpoon of a final judgment?"

In *Randle* v. *Stone,* 77 *Ga.* 501, Randle, the purchaser of an engine and boiler, made his note containing the provision "that the title, ownership, or possession does not pass from the said O. M. Stone & Company until this note and interest is paid in full, and they may take possession of said engine and boiler, and sell the same for my account, at any time, in case this note is not promptly paid, in which case I hold myself liable for any and all loss or damage caused by my failure to meet this note." It will be observed that this stipulation is somewhat similar to the second provision of the contract referred to in the question of the Court of Appeals. The engine and boiler were destroyed by fire in the actual possession of the purchaser, but before the maturity of the note or contract; and though the only question before this court in the *Randle* case was, "whose was the loss, the seller's or the buyer's?" the contract, as in this case, made a clear reservation of title, ownership, and right of possession in the vendor and its transferees, which may be asserted whenever there is danger of misuse or confiscation.

We are next referred to *Glisson* v. *Heggie,* 105 *Ga.* 30 (supra). In that case a note of $200 was given for the purchase of 2 mules, with reservation of title to the property in the vendor until the pur-

chase-money was paid. In the same instrument a mortgage on land was given by the vendee to secure the note. One of the mules died before the maturity of the note, and at its maturity a credit of $110.75 was entered on the note. Afterwards the vendor brought bail-trover for recovery of the remaining mule, which not being replevied was, on petition of plaintiff, sold under order of court, and the proceeds of the sale, $87 less costs, were awarded to the plaintiff, who claimed no hire for the property. Subsequently the plaintiff proceeded to foreclose his mortgage on the land, for the balance he claimed due upon the note. It was held "that the bail-trover proceedings constituted a rescission of the contract as to the balance of the purchase-money, if any, due, and the court erred in granting a rule absolute foreclosing the mortgage." In delivering the unanimous opinion of the court, Mr. Justice Lewis said: "The contract entered into between the plaintiffs and defendant is rather a novel one in its nature. It reserves in the vendors title to the property sold, and in another clause of the instrument creates a lien upon that property, and certain lands of the vendee. We are inclined to think that under the instrument the vendors, at their election, could have treated it as an absolute sale, and have proceeded to foreclose their mortgage upon the property sold, as well as the land; or they could have relied upon their right of title to the mules, and have brought trover therefor. This is, however, a question not made by the record. The vendors elected to bring trover for the remaining mule, and of course would be estopped from denying their right to do so. It is a well-settled rule of law that where property is sold with the condition that the title is to remain in the vendor until the purchase-price is paid, unless otherwise stipulated, the risk is on the seller, and in case of loss of the property without fault of the buyer, no action can be maintained for the purchase-price. . . The trover proceedings and their results amounted to a rescission of the whole contract so far as the purchase-price of the property was concerned. When the vendor of personal property reserves title in himself until the purchase-money is paid, his sale is only a conditional one, and when he elects to take the property, either by taking possession of it under his contract, or by claiming it in an action of trover, the measure of his recovery is the property itself, and its value for hire, if any is claimed. In the case of *Tidwell* v. *Burkett*, 81 *Ga.* 84 [6 S. E.

816], it was decided, where a note for the purchase-money of a mule, reserving title in the seller, had been transferred by him to third parties, and was in their hands when action of trover for the mule was brought and at the time a verdict was obtained for the same, that the verdict was unwarranted by the facts; that the bringing of the action was equivalent to a rescission of the whole contract; and that there was no right to recover the value of the property from the vendee before the note had been delivered up to him. . . What we do rule is, that when an election is made to take the property itself, and it has been recovered by the plaintiff, this is a rescission of the contract of purchase, and no subsequent action can be had for any further recovery. In the present case it is true the property itself was not awarded to the plaintiffs, but the action had was equivalent to the same thing. There was a failure to replevy the property seized under bail-process, and upon application of the plaintiffs it was sold in accordance with the provisions of § 4607 of the Civil Code. . . Manifestly then the proceeds of the sale, in contemplation of law, stand in lieu of the property itself, and the recovery of such proceeds has the same legal effect on the rights and liabilities of the parties as if the property had been replevied, and then, upon the trial of the trover proceedings, had been recovered by the plaintiffs."

The provisions of the Civil Code (1910), § 3298, as amended by the act of 1921 (Ga. L. 1921, p. 114), have no application to the question presented by the Court of Appeals, because the owner of the contract retaining title to personal property to secure a debt did not seek to foreclose it as provided in the act of 1921.

Under the ruling of this court in *Enterprise Distributing Corporation* v. *Zalkin*, 154 *Ga.* 97 (supra), and cit., it is our opinion that the question now before us can only be answered in the affirmative. In the *Zalkin* case the rescission of the contract of sale by the seller resulted from the vendor retaking possession of the property sold upon the buyer's failure to pay therefor; and it was held: "A rescission of the contract of sale by the seller under such circumstances gives to the buyer the right to the return of so much of the purchase-price as has been paid, less reasonable rental, and less any deterioration in the value of the property by damage, over and above natural wear and tear, which it may have sustained while in the possession of the purchaser. . . Generally rescission of a contract

of sale is in toto, leaving the rights of the parties to be determined by a court of equity, and not by the abrogated contract. . . When the seller rescinds a conditional contract of sale, and repossesses himself of the property sold, a court of equity may require the return of the purchase-money paid, less the amount of any damage sustained to the property, and a reasonable compensation for the use of the same; especially if there be a clause in the contract providing that upon a certain contingency the property shall be returned to the seller." The contract to which the question refers in this case does not require the buyer to return the property, as in the *Zalkin* case, but it authorizes the seller to retake it himself without the necessity for any legal proceedings.

As said by this court in *Wynn* v. *Tyner,* 139 *Ga.* 765, 770 (supra) : "There are cases in which a party has an election of remedies, such as where a transaction partakes both of the nature of a tort and a contract, and where the party may sue for the tort, or waive the tort and sue on the contract; where the principal may ratify or repudiate the unauthorized act of his agent; where one has the option to declare a contract terminated because of a breach of a condition subsequent, or to insist upon its performance; and other instances which might be mentioned. But this is different from a contract authorizing one of the parties to apply a summary statutory remedy, authorized by law under one set of circumstances, to the enforcement of his rights under a different set of circumstances. The law declares when the statutory method of foreclosure by affidavit may be employed. Parties can not by agreement make such a proceeding applicable to a different class of cases. It is evident that an agreement attempting to give a party the right to recover land by possessory warrant, or to recover personalty by an action of ejectment, or by a warrant to dispossess a tenant, would not be valid or confer upon the courts the right to proceed in accordance with the agreement, instead of in accordance with the statutes on these subjects." See also *Purdy* v. *Dunn Machinery Co.,* 142 *Ga.* 308 (82 S. E. 887), in which Mr. Justice Atkinson delivered the opinion. It was held: "If the seller brings trover to recover a portion of the goods, on account of the refusal to execute the notes and conditional-sale contract, that is a repudiation of the contract in its entirety. *Glisson* v. *Heggie,* 105 *Ga.* 30 (31 S. E. 118). He can not subsequently assume an inconsistent position by asserting the

validity of the contract of sale, and, on the basis thereof, foreclose a materialman's lien against the real estate of the purchaser for the balance of the goods which were used in the construction of the building. *Bacon* v. *Moody*, 117 *Ga.* 207 (43 S. E. 482) ; *Tuttle* v. *Stovall*, 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168). . . . There was no allegation in the petition as amended that, after notice of the failure of the purchaser to give the notes in accordance with the terms of the contract, the vendor elected to treat the transaction as a completed sale by filing his claim of lien for the price of the goods."

So we hold that in the circumstances appearing from the question propounded by the Court of Appeals there was a rescission of the contract, with the results ordinarily accruing from rescission, no matter what might be the purpose or intent with which the proceeding in trover was instituted. The question of the Court of Appeals is answered in the affirmative. *All the Justices concur.*