26252. C. I. T. CORPORATION *v.* SMITH.

DECIDED OCTOBER 1, 1937.   REHEARING DENIED OCTOBER 21, 1937.

*Joseph G. Myerson, Wright & Covington,* for plaintiff.
*Maddox & Griffin,* for defendant.

SUTTON, J.  This was a trover suit by the C. I. T. Corporation against W. O. Smith, for recovery of a certain Plymouth automobile. The plaintiff claimed title to the automobile, and alleged that its value was $350 on September 24, 1936, when the suit was filed, and that under ordinary conditions of use it would have been worth $550 at that time, but that it had been involved in two or more wrecks. The defendant in his answer admitted possession, and denied that the plaintiff was entitled to possession of the automobile, and set up that the right of possession was solely in the defendant. After introduction of evidence by the plaintiff, the court granted a nonsuit, and the plaintiff excepted. Substantially the following facts appear from the evidence: On June 10, 1936, the defendant purchased the automobile involved in the case from Andrews Motor Company, Rome, Georgia, at a price of $837, paying at the time $100 in cash and being allowed $125 for a truck traded in on the purchase, leaving a balance of $612 which was to become due and payable in eighteen equal monthly installments of $34 each. The defendant executed to the Andrews Motor Company a retention-title contract covering this automobile, which was transferred to the C. I. T. Corporation and which, among other things, provided: "Said property will be kept at the following address 500 Charlton Road, Rome, Ga. . . If any installment is not paid in full when due, or if purchaser fails to perform any of his obligations or to comply with any condition of this contract, or if the holder hereof shall deem itself insecure, the full amount unpaid hereunder, including any note given, shall without notice become due and payable forthwith. . . Purchaser agrees in any such case to deliver the property to

the holder, and the holder may, without any previous notice or demand for performance, and without legal process, enter any premises where the property may be found and take possession thereof and of anything found therein." At the time of the purchase the automobile was new. The defendant made three payments in accordance with his contract after the same had been transferred and assigned to the plaintiff, and when this suit was brought on September 14, 1936, no installment was past due, but the plaintiff based its right to maintain the action on the ground that said automobile was not being kept at the address provided for in the contract and because plaintiff deemed itself "insecure." The evidence shows that the defendant, after purchasing this automobile, had turned the same over to his brother-in-law, Forrest Davis, who kept it about one half the time and drove it twice as much as the defendant did; that Davis kept this automobile sometimes at night under a shed at a little stand where he lived, there being no garage at his place, although the defendant had a garage at his home; that at the time of the bringing of this suit this automobile had a reasonable market value of from $325 to $350; that it had been in two wrecks before the bringing of the suit, of which wrecks E. P. Wallis, manager of the Rome office of the C. I. T. Corporation, had information, the first wreck costing somewhere in the neighborhood of $155 to repair and the last about $25. The evidence showed further that Davis had the reputation of handling and transporting liquor by means of an automobile, and that Wallis knew of this reputation before the bringing of this suit, and had personal knowledge and information that Davis had been tried and convicted of illegal handling of liquor. Davis's reputation as to handling liquor was testified to by the sheriff of Floyd County, the chief of police of the City of Rome, who had formerly been a deputy sheriff of said county, by the solicitor-general of the Rome judicial circuit, and other witnesses. Also, records in eight cases, from 1932 to 1936, were introduced in evidence, which records showed that Davis had either pleaded guilty or had been tried and convicted in all eight of these cases in the courts of Floyd County, Georgia, these pleas and convictions being in connection with the illegal handling of intoxicating liquors. The evidence also showed that this automobile, in addition to having been wrecked on two separate occasions before

this suit was brought, had been subjected to abuse and excessive use, all of which was known to the manager of the plaintiff's Rome office, the evidence showing that this automobile had been run from the date of its purchase on June 10, 1936, to the date it was seized under this proceeding on September 14, 1936, a distance of 26,980 miles. The evidence also showed that if this car had not been wrecked and abused, under ordinary conditions it would have been worth $525 on the date this suit was filed. Wallis, manager of the plaintiff's Rome office, saw Davis driving this automobile before this suit was brought and knew of Davis's reputation for handling liquor at that time. The defendant told Wallis that Davis had wrecked this automobile, and Wallis saw Davis with this automobile at the time of the second wreck when it was at a garage in Rome for repairs. At the time of the first wreck, when the defendant told Wallis that Davis had wrecked this automobile, Wallis requested the defendant to pay off the contract, as he considered the plaintiff's collateral insecure, and at that time the defendant stated to Wallis, manager of the plaintiff's Rome office, that he would make arrangements to refinance the automobile somewhere else, but he did not do so, and soon after the second wreck this suit was brought. Some of the witnesses for the plaintiff testified, on cross-examination, that the defendant had a good job, was making from $40 to $50 per week, and had a good credit risk; however, some of these witnesses qualified their statement by saying that they would not care to sell him an automobile otherwise than by taking a lien thereon in the usual way. The evidence does not disclose that the defendant had any property except another automobile. The automobile involved in this case was sold at quick order sale for $400, and was bought in by the plaintiff, which in turn resold the same under a repurchase agreement or contract to the Andrews Motor Company, the original seller, for the balance due on the contract of $471.13. The evidence also showed that this automobile was covered by fire and theft insurance, and also by a policy covering collision, carrying a $50 deductible clause. In addition to testifying to Davis's reputation, the sheriff of Floyd County testified that he had caught Davis transporting liquor in automobiles.

■ "Where a defendant in an action of trover admits in his plea or answer his possession of the property at the time of the

548

action, under an adverse claim of title or right of possession, it is not necessary for the plaintiff to prove a demand and refusal or any other conversion of the property." *Smith* v. *Commercial Credit Co.,* 28 *Ga. App.* 403 (111 S. E. 821); Code, § 107-101. "Where the defendant is in possession at the time suit is entered, proof of demand and refusal is necessary only to save the plaintiff the costs of court in case the defendant should disclaim title to the property." *Pearson* v. *Jones,* 18 *Ga. App.* 448 (4-*a*) (89 S. E. 536). The plaintiff contended that it had title to the automobile in question, and, under the facts, was entitled to the possession thereof by virtue of the insecurity clause in the retention-title contract. The defendant in his answer admitted possession, denied that the plaintiff had the right of possession, and alleged that "said right of possession is solely in this defendant." The defendant now contends in his brief that a demand by the plaintiff on the defendant for the automobile was essential before the present action could be brought. This contention can not be sustained, because it clearly appears from the record that a demand would have been useless and unavailing had one been made. This being true, no demand was necessary. *Muse* v. *Wright,* 103 *Ga.* 783 (30 S. E. 662); *Grant* v. *Miller,* 107 *Ga.* 804 (33 S. E. 671); *Scarboro* v. *Goethe,* 118 *Ga.* 543 (45 S. E. 413). See also *Young* v. *Durham,* 15 *Ga. App.* 678 (5) (84 S. E. 165); *Securities Trust Co.* v. *Marshall,* 30 *Ga. App.* 379 (3, 5) (118 S. E. 478); *Whelchel* v. *Roark,* 31 *Ga. App.* 75 (119 S. E. 451); *Kalas* v. *Fay,* 31 *Ga. App.* 109 (5) (120 S. E. 28).

■ The retention-title contract provided: "Said property will be kept at the following address, 500 Charlton Road, Rome, Ga. . . If any installment is not paid in full when due, or if purchaser fails to perform any of his obligations or to comply with any condition of this contract, or if the holder hereof shall deem itself insecure, the full amount unpaid hereunder, including any note given, shall without notice become due and payable forthwith." The insecurity provision in this contract is valid and enforceable. 55 C. J. 1286, § 1311 (3). Under the facts and circumstances of this case the jury would have been authorized to find that the plaintiff acted in good faith in deeming itself insecure and in bringing its trover action under the insecurity clause of the contract.

■ Under the record as here presented, the court erred in granting a nonsuit.

*Judgment reversed. Stephens, P. J., concurs. Fellon, J., dissents.*

FELTON, J., dissenting. A plaintiff can never be entitled to recover in a trover suit in the absence of proof of a conversion or something equivalent thereto. The Code, § 107-101, declares: "In actions to recover the possession of chattels, it shall not be necessary to prove any conversion of the property where the defendant is in possession when the action is brought." If this section applies to trover suits, it has never been construed to mean literally what it says. It is construed to mean that proof of conversion may be dispensed with in cases where the defendant is in possession claiming the property as his own, in which event proof of conversion, as such, is unnecessary, because the claim of the defendant itself amounts to a conversion. The violation of the insecurity clause in the contract in this case does not constitute a conversion. It simply accelerates the maturity of the contract, and gives the holder whatever right he would have had if the contract matured in due course. We should therefore treat the case as if the contract had so matured. Under a retention-of-title contract the buyer has the right of possession of the property. The seller, or transferee, has the title. The seller is not entitled to possession unless there has been a conversion. There was no evidence of conversion in this case. There was no demand and refusal, or anything else amounting to a conversion, and under the authority of *Barbour* v. *Day Co.*, 37 *Ga. App.* 267 (139 S. E. 909) a nonsuit was demanded.

ON MOTIONS FOR REHEARING.

SUTTON, J. 1. On the issue whether the plaintiff acted in good faith in deeming itself insecure, the testimony of certain witnesses to the effect that they would consider the defendant good for certain amounts was properly admitted in evidence over objection of counsel for the plaintiff. On the same issue the court erred in not permitting the local manager of the plaintiff corporation to testify that before filing the trover action, and after learning that the automobile was being used by the defendant's brother-in-law, Forrest Davis, who had the reputation of handling and transporting liquor and had wrecked the automobile, he requested the

original seller of the automobile to repurchase the contract, and that he also sought advice from the plaintiff's counsel as to its right to bring the trover action to protect its interest.

2. The contention that the plaintiff is not entitled to recover, because on the trial of the case it was shown that the plaintiff had divested itself of title to the automobile, is without merit, it appearing without dispute that the plaintiff had title at the time the suit was instituted. *Willis* v. *Burch,* 116 *Ga.* 374 (42 S. E. 718); *McElmurray* v. *Harris,* 117 *Ga.* 919 (43 S. E. 987).

3. The failure of the plaintiff to surrender to the defendant, on the trial of the case, the retain-title note given to the seller for the balance due on the automobile would not bar the plaintiff from recovery, inasmuch as bringing the trover action rescinded the sale contract, and thereafter neither the plaintiff nor the original seller could enforce the note or the sale contract against the defendant. *General Motors &c. Cor.* v. *Coggins,* 178 *Ga.* 643 (173 S. E. 841).

The motions for rehearing are

*Denied. Stephens, P. J., and Felton, J., concur.*