## Commercial Credit Co. v. Cain.

(In Banc. April 28, 1941. Suggestion of Error Overruled June 9, 1941.)

[1 So. (2d) 776. No. 34526.]

Cooper & Thomas, of Indianola, for appellant.

Stovall Lowrey and John W. Crisler, both of Clarksdale, for appellee.

Argued orally by **Forrest C. Cooper**, for appellant, and by **John W. Crisler** and **Stovall Lowrey**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On May 9, 1940, appellee purchased from Clarksdale Auto Sales, which was a business conducted by her husband, a Studebaker Champion automobile for which she paid $100 in cash, and for the balance executed a conditional sales contract, by which title was retained in the seller until the balance of the purchase price evidenced by twenty-four monthly notes of $37.05 each should be fully paid. The contract was immediately assigned and delivered by the seller to appellant for full value received.

The agreement contained the provisions ordinarily found in these conditional sales contracts, among which was the following: ''Or if for any other reason Seller

should deem itself or said Car insecure, Seller or his representative may take possession of said Car . . . wherever it may be found, and may enter any premises therefor without notice or demand to Purchaser and without legal process, and Purchaser waives all claims for damages caused thereby,'' etc.

On May 31, 1940, and before the first installment note became due, appellant, upon probable cause, as hereinafter stated, exercised its right under the foregoing provision to take possession of the car, and did so by taking it from a place described in the declaration as one of the public streets of Clarksdale, and while the husband of appellee was present, appellee having placed the automobile in her husband's active care, control and possession. The husband objected to the taking, but there was no altercation, nor was there any force, or violence or threats thereof. The keys were in the car; and when appellant's agent stated to appellee's husband that the car was going to be taken, the agent soon got in the car and drove it to a nearby storage house where it was put for safe keeping in the custody of that place.

An action in tort was brought by appellee, and on the trial she recovered actual and punitive damages. The course of the trial covered a rather wide range, so that a two-volume record thereof has been brought to this Court. To deal in detail with the facts would require an opinion of undue length, wherefore we shall not undertake a set-up of the facts further than necessary to disclose the law points involved.

The quoted provision is generally referred to in the books as the insecurity clause, and it is held reasonable and valid by all the courts. Its usefulness and availability is of more than ordinary importance in its application to mortgaged property which is subject to so many hazards as are attendant upon mortgages, or which, in effect, is the same thing, the retention of title for security of the purchase money, on automobiles, motor trucks, and the like. And it is not necessary that there be any

present default in payments, or any breach of the contract, in the strict sense of that term, in order that the clause may be brought into operation. It is self-sufficient; and whatever the mortgagor may have done, or omitted to do, as regards other provisions of the mortgage contract, the insecurity clause is available when the circumstances as respects the jeopardy, or rather the apparent jeopardy, are present under the rule which is hereinafter stated and adopted.

This so-called insecurity clause has been interpreted in such manner as to divide the decisions of the various courts into three classes: (1) Those which hold that the mortgagee is the sole judge of the issue whether the security has become endangered, and that no proof is needed beyond the fact that he has actually deemed himself unsafe and has proceeded upon that belief; (2) those which hold that the mortgagee may proceed upon such circumstances of presently apparent danger as would furnish probable cause for the belief that the security is unsafe when viewed in good faith by a man of reasonable prudence; and (3) those which hold that the danger must rest in a fact or facts of actual, ultimate existence, disregarding the appearances, however indicative of probable cause the appearances may be.

The view first mentioned is supported by a strong line of cases, and by Jones on Chattel Mortgage (5 Ed.), pp. 636-642. The third view is that of a minority. We adopt the rule as expressed by those within the second classification above indicated, and believe that in so doing we align ourselves with the weight of the authorities as well as with the sounder reasoning. See 55 C. J., p. 1286; 11 C. J., pp. 554-556; 14 C. J. S., Chattel Mortgages, sec. 182; pp. 788, 789; 10 Am. Jur., pp. 870, 871, and the numerous cases cited in notes to those texts. And adopting this interpretation of the insecurity clause, we are of the opinion that, taking the evidence in behalf of the mortgagor, together with the various admissions therein, as true, and adding thereto that part of the evidence

on behalf of appellant which is substantially undisputed, the right of the mortgagee to avail of the insecurity clause, and to proceed under it, was established in this case in point of law as applied to the facts thus ascertained.

Appellee says in her brief, however, that "the only question is whether appellant oppressively took appellee's car or whether it was surrendered voluntarily." And appellee argues that unless it was surrendered voluntarily, the action of appellant in taking it was an oppressive tort.

The express language of the quoted insecurity clause to which we again call attention is that when the clause has come into operation the mortgagor "may take possession of said car . . . wherever it may be found and may enter any premises therefor without notice or demand to purchaser and without legal process." This provision is not one, any more than any of the others, which may be revoked by the mortgagor, as would be the effect if he could sterilize it by merely withholding his consent to the exercise of the contract right. If this were permissible, the clause had as well be omitted from the contract. Under it the mortgagee has the right to take possession, in so far as concerns the manner thereof, over the objections of the mortgagor, so long as openly done at a proper place, and without force or violence or any threat thereof, and when the circumstances are such as to create no apprehension of any violence on the part of the mortgagor, or other person from whom the possession is being taken. The limitations on the manner of the taking and the reasons for the limitations are set forth in Commercial Credit Company v. Spence, 185 Miss. 293, 184 So. 439, and need not be repeated here. The limitations were not transgressed by the mortgagee in the present case, and there was, from a legal standpoint, no actionable wrong on the part of the mortgagee either in exercising its rights under the insecurity clause or in the manner of that exercise.

From the standpoint of mere social preference, it may well be thought that unless the surrender of possession is entirely agreeable to the mortgagor, it would be better to resort to legal process, but this entails costs, often considerable, and sometimes a delay which in itself under some circumstances might be dangerous to the security. By the limitations set forth herein we have cut down the manner of the exercise of the right as much as the law and the purposes of the insecurity clause will allow, and we cannot impose further limitations upon it.

But as pointed out in the Spence case, when possession is recovered by the mortgagee, he must still deal with it as security and with reference to the equitable rights of the mortgagor; and this rule applies with equal force when the property has been taken under the insecurity clause. When the mortgagee acts under that clause, he must give to the mortgagor without any unreasonable delay or unwarranted costs the opportunity to remove the insecurity or danger to the security and to have prompt redelivery to him of the property when this has been done; and in respect to this the mortgagee must impose no arbitrary or unreasonable terms, or conditions, but only such as ought to satisfy a reasonably fair and prudent person.

It appears from the record of the evidence on behalf of appellant that it made or attempted to make what it considered a reasonable arrangement with appellee for the return to her of the car and that this was promptly offered. All this seems to be disputed by appellee, or at best there is no clear development of the facts on this point. The particular issue was not submitted to the jury, not a single instruction for either side brought it to the attention of the jury or called for a decision by the jury upon it. The case was presented on the two questions hereinabove dealt with as respects the availability of the insecurity clause and the manner of the taking thereunder. What was done after the taking was put aside

874

from the jury, and as to the latter issue, we do not know what the jury would have decided.

We are holding, as already stated, that there is no liability upon the two issues submitted to the jury, and if there were nothing else in the case than those two issues, we would enter a judgment of dismissal here. But there remains the issue as to what was done after the taking by the mortgagee, and as to that issue we remand for a new trial.

Reversed and remanded.