Mattie M. BULLOCK, Appellant,

v.

George YOUNG and Commercial Credit Corporation, a corporation, Appellees.

No. 1694.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 17, 1955.

Decided Dec. 13, 1955.

Everett L. Edmond, Washington, D. C., for appellant.

Kenneth Wells Parkinson, Washington, D. C., with whom Roger Robb, Washington, D. C., was on the brief, for appellee Commercial Credit Corp. No appearance for appellee George Young.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant, plaintiff below, filed suit against defendants for conversion of her automobile. The first count charged that defendant Young, to whom she had entrusted it for repairs, converted it to his own use on March 18, 1955. The second count alleged that defendant Commercial Credit Corporation converted said automobile from the premises of defendant Young on the same date. Trial was held without a jury and this appeal is from a judgment entered for defendants.

On September 4, 1953, plaintiff, a resident of the District of Columbia, entered into a conditional sales agreement for the purchase of an automobile from Old Dominion Motors, Inc. of Alexandria, Virginia. Plaintiff made a down payment and it was agreed that the balance would be payable in twenty-four monthly installments, the vendor retaining title to secure the unpaid purchase price. The contract provided that plaintiff keep the automobile in the District of Columbia; that she obtain and keep in force fire and theft insurance in such amounts as would be satisfactory to the seller or seller's assignee; and that she assign the proceeds of all such insurance to the extent of the unpaid balance. It also provided that if plaintiff defaulted on any obligation or if the holder should deem itself insecure, the balance would, at the option of the holder, become due, and in such case the plaintiff should deliver the automobile to the holder, or the holder could, without notice or demand, enter any premises where the car might be found, take possession, and retain all payments as compensation for its use. By proper assignment, Commercial Credit Corporation became the owner of all the rights of the vendor under the contract. In August 1954, plaintiff defaulted in payment of the installments and the account continued in a delinquent status through January 1955. The automobile was involved in two accidents, the first of which was reported on December 8, 1954, and the second on January 15, 1955. On January 21, 1955, the insurance company canceled plaintiff's policy and refunded to Commercial Credit Corporation the unused portion of the premium. No installment payment was made by plaintiff for February 1955 and a proffer of payment after March 1, 1955, was refused, demand being made at that time for full payment of the balance due under the contract.

About March 1, 1955, Commercial Credit Corporation, in an effort to locate and inspect the car to verify the property damage, ascertained that it had been towed to the garage of defendant Young by plaintiff's son, who, according to the record, "seemed to be the person who principally drove plaintiff's car and arranged for its repairs." A representative of Commercial Credit Corporation conferred with Young and advised him that his company was going to repossess the car for default in monthly installments. There was testimony that following this interview, Young, through an employee, notified plaintiff's son that someone was going to repossess the car and the son is alleged to have stated that "if they want to take it, let them have it." Young thereupon released the car to Commercial Credit Corporation, having collected from it his repair charges.

Based on these facts, the trial court found, and we think correctly, that plaintiff had been in arrears in her payments for a period of months; that her automobile had been involved in two collisions; that she had failed to fully and promptly repair the damage to the automobile, and that under the insecurity clause of the contract Commercial Credit Corporation had a right, at its option, to take possession of the automobile. The court also found that defendant Young had a garageman's lien for repairs to plaintiff's automobile and that having discharged Young's lien, Commercial Credit Corporation, who had paramount title to the automobile, was entitled to take possession.

Appellant contends that the trial court erred in holding that there was no conversion by Young inasmuch as he failed

to follow the statutory requirements as provided by the District of Columbia Code.[1] Congress provided that:

· "All persons storing, repairing, or furnishing supplies of or concerning motor vehicles * * * shall have a lien for their agreed or reasonable · charges for such storage, repairs, and supplies when such charges are incurred by an owner or conditional vendee * * * of such motor vehicle * * *. Before enforcing such lien, notice in writing shall be given to the title holder, * * *." Code 1951, § 38–205, Supp. III.

This Code provision spells out the steps to be taken by a garage keeper to perfect his lien for sale of the automobile. But the record in this case fails to indicate that Young was attempting to enforce his lien by sale and, therefore, it was unnecessary for him to give notice or to take any other affirmative step to perfect or preserve it, since such notice is only required as a prerequisite to detention and enforcement.[2] Appellant also argues that defendant Young was not privileged to discharge his lien by accepting the amount thereof from Commercial Credit Corporation, since this would allow the acceptance of the amount of the lien from any person who chooses to pay and release of the automobile to such person. Such contention fails to recognize the well-established principles of bailment law. No authority need be cited for the proposition that the rights of parties to a bailment must yield to those of the true owner, and a wrongful refusal to yield to the rightful owner may constitute a conversion.

Appellant also contends that since the conditional sales agreement was executed in the State of Virginia, the contract should be governed by Section 55–91 of the Virginia Code. In answering this contention, we note the record does not disclose that this point was raised or argued in the trial court. Appellant's failure to raise this point at trial prevents its consideration on appeal.[3] Only in exceptional case where injustice might. otherwise result will an appellate court be prompted to review questions of law which were not raised at trial.[4] No injustice would result in the instant case since cases which have arisen under, and which have interpreted the Virginia Code provision,[5] demonstrate that the right to repossess peaceably without resort to legal process has in no way been restricted.[6] The contention is also without merit for another reason. Under the terms of the contract the automobile was to be kept at appellant's place of residence in the District of Columbia. Thus, there is a reasonable inference that the parties intended to contract with reference to the laws of the District of Columbia. It has been held that where a conditional sales contract requires the automobile described therein to be kept within the District of Columbia, the contract is to be construed according to the laws of the District.[7]

Finally, we are asked to rule that the trial court erred in enforcing the insecurity clause of the conditional sales agreement, which provided that the vendor or its assignee could repossess the automobile without legal process should the vendor or its assignee deem itself or the automobile insecure. It is alleged by appellant that this

1. Appellant cites D.C.Code 1951, §§ 38–201 and 38–203. However, 201 was repealed on June 3, 1952, 66 Stat. 98, Chap. 361, para. 6, and provisions relating to lien of garage keepers and liverymen are now set out in 38–204 to 38–209, Supp. III.

2. Gordon v. Sullivan, 88 U.S.App.D.C. 144, 188 F 2d 980.

3. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

4. Hormel v. Helvering, supra.

5. The cases cited in footnote 6 interpret Sec. 5190, Code of Va. (1919) which section is presently Sec. 55–91, Code of Va. (1950).

6. Universal Credit Co. v. Taylor, 164 Va. 624, 180 S.E. 277; Lloyd v. Federal Motor Truck Co., 168 Va. 72, 190 S.E. 257.

7. Stern v. Drew, 52 App.D.C. 191, 285 F. 925.

clause is unlawful under the Virginia Code, Section 55–91. As already stated, the contract is to be construed according to the laws of the District of Columbia. However, there is no provision in the District of Columbia Code concerning the validity of such clauses in conditional sales contracts. No local cases on the point have been called to our attention and we have been unable to find any. We note, however, that other jurisdictions have generally held such clauses to be valid and enforceable unless the seller acted in an arbitrary manner.[8] We agree with the trial court that the evidence fully justified a finding that appellee had reasonable cause for believing itself insecure. Appellant was delinquent in her payments for a period of months and she had failed to fully and promptly repair damages to the automobile which resulted from two accidents while it was in her possession. Under such circumstances, appellee's repossession under the terms of the insecurity clause cannot be considered arbitrary; nor can its requirement that the balance be paid in full upon default be considered an imposition of unreasonable terms or conditions.

Affirmed.

8. Commercial Credit Co. v. Cain, 190 Miss. 866, 1 So.2d 776; C. I. T. Corporation v. Smith, 56 Ga.App. 544, 193 S.E. 261, affirmed 186 Ga. 199, 197 S.E. 322; Andrews v. DeLorm, 102 Cal.App. 623, 283 P. 393; see also 78 C.J.S., Sales, § 602c.