### 49401. NATIONAL BANK OF GEORGIA v. CUT RATE AUTO SERVICE, INC.

EVANS, Judge.

Moses Long bought a Cadillac automobile and financed the purchase with National Bank of Georgia, which took title as security for payment of the loan. Long placed the automobile in the hands of Cut Rate Auto Service, Inc. for repairs, and Cut Rate made repairs thereto, which it contends were of the value of $4,100.

National Bank of Georgia sued Cut Rate in trover for the automobile, and alleged its value to be $6,600. Cut

Rate defended and contended, inter alia, that it had not been paid for the repairs and that it had a legal right to retain possession of the car; and that the value of the car was not $6,600 as alleged, but was only $600. It was proven at the trial that the car had been damaged by Cut Rate while in Cut Rate's possession, after the repairs were made, *and before Cut Rate filed its answer to the trover suit.* The car had been wrecked, demolished, and reduced to a pile of junk, or a car with junk value only, amounting to $600. The collision was caused by one of Cut Rate's wreckers backing into the Cadillac on Cut Rate's premises where it had parked said Cadillac.

The case proceeded to trial before the judge without a jury, who made findings of fact and conclusions of law, and fixed the damages from the date defendant filed defensive pleadings through the date of trial, and found that the highest damages proven within those dates was $600, and rendered judgment for plaintiff for that amount, plus $15.41 interest.

Plaintiff appeals and contends the trial judge erred in limiting and restricting his recovery to the highest proven damages between date when defendant filed its answer and until the end of the trial. *Held:*

1. The only question for decision here is as to whether the trial court properly applied the law and made a correct finding as to damages. Was plaintiff limited to the highest proven value of the car between date of defendant's answer and the end of the trial, as the trial judge held? If this holding is correct, it means that a defendant, who is sued in trover, may demolish the property *after he is sued, and before his answer is filed,* and reduce the property to junk, and escape liability for the true value. We do not apprehend this to be the law. ". . . one will not be permitted to profit by his own wrong." *Fuller v. Fuller,* 211 Ga. 201, 202 (84 SE2d 665).

2. The first error by the trial judge was in holding that the conversion did not take place until the filing of defensive pleadings. The law is plain, as is held in *C. I. T. Corp. v. Smith,* 56 Ga. App. 544, 547 (193 SE 261). "Where a defendant in an action of trover admits in his plea or answer his possession of the property at the time of the action, under an adverse claim of title or right of

possession, it is not necessary for the plaintiff to prove a demand and refusal. . ." Also see *Young v. Durham,* 15 Ga. App. 678 (5) (84 SE 165), which case is cited by the lower court.

The trial judge incorrectly construed this language to mean that Cut Rate's adverse claim of possession (eliminating necessity to prove demand and refusal), did not take place until the very moment when the answer was filed. But the answer must be construed in pari materia with the uncontradicted evidence adduced at the trial. The uncontradicted testimony of Alex Parham, manager of Cut Rate, was to the effect that the car was brought in for repairs about one week after January 10, 1973, and thereafter and continuously until the case was tried, Cut Rate had the car in exclusive possession and adversely claimed right of possession against any and all other persons during that entire period. (See deposition of Alex Parham, R. pp. 9-46, and testimony of Alex Parham, Tr. pp. 29-59.)

3. The foregoing disposes of the question of conversion favorably to plaintiff. It was not the destruction and demolition of the Cadillac by Cut Rate which proved a conversion; it was Cut Rate's retention of possession and adversely claiming the right of possession of the Cadillac from January 17, 1973, until the date of trial in February, 1974. As we have previously stated, this conduct by Cut Rate made it unnecessary for plaintiff to prove a demand for the car; and as is held in *Young v. Durham,* 15 Ga. App. 678 (5), supra: "The purpose of a demand in a trover suit is to furnish evidence of conversion."

4. The lower court adjudged that plaintiff was entitled to recover in this case, and from that ruling Cut Rate has not appealed. Thus it is the *"law of this case" that plaintiff was entitled to recover* and the only question for consideration by the court under this posture of the case is as to the *amount of the judgment* in plaintiff's favor. Any consideration of whether or not plaintiff was entitled to a judgment is completely irrelevant and immaterial. See Code § 110-501; *Spacemaker v. Borochoff,* 112 Ga. App. 512, 515 (145 SE2d 740); *Pendley v. Brooks,* 119 Ga. App. 268, 270 (166 SE2d 898).

5. There was no duty whatever upon plaintiff to show that Cut Rate's negligence caused the demolition of his Cadillac automobile. As is held in Division 5, supra, the *law of this case* is that plaintiff was entitled to recover, and there being no appeal by defendant, he is not entitled to any consideration of that question here. But, suffice to say, if that question were before us, Code § 12-403 shows this was a bailment and that, the "bailee is bound to use ordinary care for the safe-keeping and return of the automobile." And in *Hight Accessory Place v. Lam,* 26 Ga. App. 163 (1) (105 SE 872), it is held that the burden is on defendant (bailee) to show the bailed article was not injured by bailee's negligence, and that bailee used ordinary care and diligence to protect the property from damage or injury. Also see *Loeb v. Whitton,* 77 Ga. App. 753, 755 (3) (49 SE2d 785). In this case Cut Rate made no showing whatever as to its lack of negligence. Alex Parham, Cut Rate's manager, testified that one of Cut Rate's wreckers, driven by one of its employees, was driven into the parked Cadillac; that Cut Rate had parked the Cadillac in position where it was not "relatively visible"; that he could not say whether the driver of the wrecker could have avoided the collision by being careful; that if Parham had been driving, it might have been different. And finally: "Q. You really don't know if he exercised ordinary care? A. Come to that point, no, I don't." (Tr. pp. 30-35.)

If the question of negligence were before us in this case, we would have to hold that the bailee (Cut Rate) did not carry the burden of showing it exercised ordinary care and diligence to protect the bailed property.

6. The lower court erred in its conclusion of law that the value of the car was fixed and limited to the period between date of filing Cut Rate's answer and date of trial, the effect of which holding was to limit plaintiff's judgment to the car's junk value of $600. There was evidence from which the trial court could have adjudged the highest proven value during the conversion to be $7,000 (limited to $6,600 by plaintiff's pleadings).

*Judgment reversed. Deen, P. J., Quillian, Clark and Marshall, JJ., concur. Deen, P. J., Clark and Marshall, JJ., concur specially. Bell, C. J., Pannell, P. J., Stolz and*

*Webb, JJ., dissent.*

SUBMITTED MAY 30, 1974 — DECIDED DECEMBER 4, 1974 —
REHEARING DENIED DECEMBER 20, 1974.

*Schwall & Heuett, Stanley M. Lefco,* for appellant.
*Horton J. Greene,* for appellee.

DEEN, Presiding Judge, concurring specially.

No demand need be made when the converted property is in the possession of the defendant. Code § 107-101. A conversion by a bailee of property bailed will defeat any lien which the bailee may have on the property; thus, in *Nalley v. Thomason,* 28 Ga. App. 787 (113 SE 65) it was held that where an automobile was entrusted by an owner to a garage keeper, the loss or disappearance of certain of its mechanical parts while in the possession of the latter which resulted in such impairment as to defeat the intended use of the vehicle was a conversion, whether caused by the negligence of the garage keeper or not, and authorized the bringing of the action. In the present case, when the garage keeper, through one of its employees, ran into the plaintiff's vehicle and effectually demolished it (reducing its value from some $7,000 to $600), this constituted the conversion, and the highest proved value sued for prior to this demolition was the amount the plaintiff was entitled to recover.

I therefore agree with Judge Evans. I am authorized to state that Judges Clark and Marshall join in this special concurrence.

WEBB, Judge, dissenting.

I must respectfully dissent.

Defendant here was an unpaid bailee for repairs. Somewhat similar, *Cotton v. Pendley,* 130 Ga. App. 552 (203 SE2d 758) was a trover action for an automobile which the plaintiff left with the defendant for repairs. The plaintiff therein appealed from the judgment on the jury verdict in favor of the defendant on his counterclaim. This court held: "Grounds 3, 4 and 6 of the enumeration of errors contend that the plaintiff was denied the right to

recover damages for reasonable hire by the trial judge's ruling to the effect that such damages were recoverable only from the date of a conversion, which did not occur unless and until there was a demand and a refusal to return possession. Since the defendant lawfully acquired possession of the vehicle as a bailee for repairs, there was no conversion unless and until the plaintiff demanded his property and the defendant *wrongfully* refused to deliver it. *Sisk v. Carney,* 121 Ga. App. 560, 562 (174 SE2d 456) and cit.; *Truscott v. Garner,* 92 Ga. App. 95 (1) (88 SE2d 197). . . The evidence that the defendant was holding the automobile in assertion of his special lien for repairs, authorized the jury's finding that there was no *wrongful* refusal to deliver, *Truscott v. Garner,* supra, (3), thus distinguishing this case from those in which the defendant denied the plaintiff's ownership and title, rather than the mere right of possession. See *Graham v. State Street Bank &c. Co.,* 111 Ga. App. 416, 418 (1) (142 SE2d 99) and cits." (Emphasis supplied.)

The only question presented in the case sub judice is whether the trial court made a correct finding as to the damages. "In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he shall prove between the time of the conversion and the trial." Code § 107-103. Up until the time of filing answer, which denied the bank's interest in the automobile, there had been no conversion and no demand and wrongful refusal to deliver. Cut-Rate had been unable to locate the owner, was unaware of the bank's rights, and was holding the car in assertion of its special lien for repairs. After the bank and Cut-Rate became aware of each other and had some discussions relative to insurance, etc., the bank finally demanded the car, Cut-Rate expressed itself as being willing to turn it over, but the bank withdrew the demand and filed its trover petition.

The trial court construed Cut-Rate's answer as amounting to a conversion, from which Cut-Rate takes no appeal. Since this was the only possible conversion shown, the trial court quite correctly held that the measure of damages was the highest amount proven between the time of filing answer and the trial.

I do not find that the record supports the assertion that the automobile was damaged by Cut-Rate after suit was filed and before answering. It appears to have been damaged before suit was filed.

Nor do I agree that the act of defendant's servant in backing the wrecker into the garage against the automobile was an act of dominion wrongfully asserted over the automobile in denial of the plaintiff's right, or inconsistent with it, and amounted to a conversion to defendant's own use of the pre-collision value of the automobile less the after-collision value of $600. It should first be noted that this was not a wilful or intentional act, that there has been no finding of negligence on defendant's part, and that the evidence does not demand such a finding. Even if the servant were negligent, however, I have not been made familiar with any binding authority which sustains the premise that mere negligence of the bailee in caring for the property bailed (in this case stored after repairs) is equivalent to a conversion. The law is otherwise.

"In order for the bailor to maintain an action in trover for the alleged conversion of the subject of bailment there must have been a positive tortious assertion of dominion over the goods inconsistent with the bailor's right of possession. Nonfeasance or neglect of legal duty, or the mere failure to perform an act made obligatory by contract, or failure to perform an act as a result of which property is lost to the owner, will not support an action of trover. Negligence in caring for the property is not an act of dominion over it such as is necessary to make the bailee liable as a converter, and generally, a bailee is not liable in trover for a loss of property through larceny from him without his fault, or because of mere negligence resulting in its destruction." 8 AmJur2d, Bailments, § 107.

"If there was negligence in the effort to deliver the trunk on the day of its arrival, and if the initial company was responsible therefor and liable either as a common carrier or as a warehouseman, that was a matter to be asserted in a different form of action. A plaintiff can not sue for a conversion and recover by proving that there was no conversion, but at most negligence in failing to promptly deliver, and a destruction by fire while the

property was stored in a warehouse. The verdict, therefore, based upon this form of action [trover] was contrary to evidence and without evidence to support it." *Southern Express Co. v. Sinclair,* 130 Ga. 372, 374 (60 SE 849).

"An action in trover can not be maintained upon proof that the property was lost by negligence of the defendant, where it does not appear that the defendant converted the same to his own use. *Southern Express Co. v. Sinclair,* 130 Ga. 372 (60 SE 849); 26 RCL 1112. It follows, therefore, that in a suit in trover against a bank, to recover for the conversion of certain bonds alleged to have been deposited with the bank as a bailee, to be held by it for safekeeping, it is not prejudicial to the rights of the plaintiff for the court to fail to instruct the jury fully as to the degree of diligence required of the bank to safeguard the property against theft or loss." *Green v. Fairburn Banking Co.,* 29 Ga. App. 3 (1) (113 SE 59).

"In trover conversion is the gist of the action. There must be some act of malfeasance, not mere nonfeasance, some positive wrong, and not the mere omission of what is right. Mere neglect of duty will not support an action of trover. *Southern Express Co. v. Sinclair,* 130 Ga. 372 (60 SE 849); *Savage v. Smythe,* 48 Ga. 562 (2); *Roll v. Black,* 2 Ga. Dec. 18 [other cits. omitted]." *Shore v. Brown,* 19 Ga. App. 476, 477 (5) (91 SE 909). Accord: *Wood v. Frank Graham Co.,* 91 Ga. App. 621 (1, 3) (86 SE2d 691); *Ben Hyman & Co. v. Solow,* 103 Ga. App. 152, 153 (118 SE2d 706).

*Nalley v. Thomason,* 28 Ga. App. 787 (113 SE 65) does not require a different result since in that case the bailee did not damage the bailed property, but rather there was a loss or disappearance under such circumstances that the jury would have been authorized to conclude that the loss was due to an unauthorized removal and appropriation to the bailee's own use. Here, at most, there was negligent damage; and negligence and theft cannot be equated in an action of trover. The remedy for negligence of the bailee in caring for the property bailed is provided for by Code § 12-403 and other applicable bailment law, and damages therefor are not properly recoverable in a trover action, which the

majority apparently seek to hold.

I am authorized to state that Chief Judge Bell, Presiding Judge Pannell and Judge Stolz join in this dissent.