437 So.2d 26 (1983)
Robert BLACK
v.
PEOPLES BANK AND TRUST COMPANY.
No. 53826.
Supreme Court of Mississippi.
August 24, 1983.
*27 Gene Barton, Candace Porter, Tupelo, for appellant.
Mitchell, Eskridge, Voge, Clayton & Beasley, William M. Beasley, Tupelo, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Lee County wherein the trial judge entered a judgment non obstante veredicto for the appellee, Peoples Bank and Trust Company. The cause originated when appellant, Robert Black, filed suit alleging appellee had wrongfully refused to allow him to redeem a repossessed pickup truck. The jury found for appellant and assessed damages at $2,500. On motion the trial judge entered a judgment n.o.v. For reasons set forth below, we reverse.
On December 22, 1979, the appellant, Robert Black, purchased a pickup truck from Dye and Pierce Motors. The truck had been selected by Robert's son, Romie, as a Christmas gift from Romie to his son, Randy. The testimony revealed that the purchase was made in Robert's name because he had good credit and Romie did not; however, there was an agreement that they would both help to make the payments. The purchase price of the truck was $5,500 but because Robert used one of his older pickups as a trade-in the balance was $4,777.29.
After the transaction was completed at Dye and Pierce Motors, the contract for the sale of the truck was purchased by the appellee bank. Bank officers testified that they would have refused to purchase the contract and finance the sale if it had been known that Romie was responsible for making the payments. The security agreement contained a provision that default occurred when "... the holder with reasonable cause determines that its interest in the vehicle be in jeopardy, or (11) if buyer shall fail to purchase and maintain insurance coverage ..."
The first two payments due on the loan (January and February of 1980) had not been received by February 26, 1980, making both past due. On the evening of February *28 27, 1980, the bank sent two collection officers, Charles Richey and Mitch Waycaster, to Robert's house to repossess the pickup. Robert testified that Richey and Waycaster demanded payment of the arrearage immediately and that he told them he did not have it that evening but would "try to get it up." Richey and Waycaster testified that Robert told them it was Romie's duty to make the payments and that he (Robert) was not going to. Robert then told them the truck was at Romie's house and was being used by Randy.
The collection agents then went to Romie's house. Finding no one at home and the keys in the truck, they accomplished the repossession. Richey then phoned the bank's vice-president in charge of collections, Lawson McClellan, and informed him that the truck had been in Romie's possession.
Two days after the repossession Robert and Romie went to the bank with their attorney, Roy Parker. At that time they tendered the past due payments in cash. The bank accepted the payments, and it was then discovered that the truck was not insured. Robert immediately left the bank and purchased an insurance policy to cover the truck. The next business day Parker phoned McClellan to arrange the redemption but was told that the bank had accelerated the debt and that Robert would have to pay the entire amount owed before the truck would be released. Shortly thereafter, Robert received a letter from the bank which informed him that the truck had been repossessed for reasons other than the past due payments. Enclosed in the letter was a check for the amount Robert had tendered in attempting to redeem the truck. Bank officers testified that the bank's refusal to allow the truck to be redeemed was founded on Romie's involvement and his bad credit history. The bank also presented evidence that this decision was made after consultation with its attorney who advised that it could refuse the attempted redemption.
Other testimony revealed that Romie Black and Charles Richey had several heated arguments regarding the truck and Romie's credit rating. The evidence relating to Robert's damages included the loss of the pickup used as a trade-in, the increased value of the repossessed truck (Randy had added fog lights and a stereo tape player), great worry, and the bank's temporary seizure of his checking account which contained forty-three dollars. The only other testimony regarding damages was Robert's assertion that his credit rating had been impaired; however, he admitted that he had not attempted to make any purchases on credit since the repossession. A bank officer testified that Robert's credit was then, and had always been, good. The jury returned a verdict for Robert Black and assessed his damages at $2,500. On motion of the bank's attorney the trial judge entered a judgment non obstante veredicto, setting aside the jury's verdict and finding for the bank.
It must be remembered that the standard of appellate review where a judgment n.o.v. has been entered requires this Court to view the evidence in the light most favorable to the plaintiff, disregard any evidence on the part of the defendant in conflict with that favorable to the plaintiff, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for the plaintiff then such verdict must be reinstated. Gee v. Hawkins, 402 So.2d 825 (Miss. 1981); Blackwell v. Dairymen, Inc., 369 So.2d 511 (Miss. 1979); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
In this case the bank claims that it repossessed the truck because of past due payments and failure to acquire insurance; however, it asserts that it refused to allow the redemption because of its feelings of insecurity due to Romie Black's involvement. There can be no doubt that the initial repossession was lawful and that the bank was rightfully acting to protect its interest in the security. Until the past due payments were rendered and insurance procurred the bank had every right to possess the vehicle. The difficulty arises only after the bank deemed itself insecure and accelerated *29 the debt in the face of Robert Black's tender of payment and purchase of insurance. The initial question then is the bank's right to deem itself insecure and accelerate the debt. The statute reads:
A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.
Miss. Code Ann. § 75-1-208 (1972). The significant term here is "good faith" and there is considerable disagreement among the states (not to mention the parties to this suit) whether good faith is measured subjectively or objectively.
The bank argues that good faith is to be measured solely by the honesty of its actions, citing Miss. Code Ann. § 75-1-201(19) (1972). That code section defines good faith as "honesty in fact" and is wholly subjective in its application. In other words, the state of mind or belief of the creditor is the measure of its good faith, regardless of the reasonableness of such state of mind or belief. This view is frequently referred to as the rule of "the pure heart and empty head" and has been adopted in a number of jurisdictions. See Van Horn v. Van De Wol, Inc., 6 Wash. App. 959, 497 P.2d 252, 61 A.L.R.3rd 241 (1972); Farmers Co-op Elevator, Inc., Duncombe v. State Bank, 236 N.W.2d 674, 18 U.C.C.R.S. 607 (Iowa 1975); and Ginn v. Citizens and Southern National Bank, 145 Ga. App. 175, 243 S.E.2d 528 (1978).
The appellant, Robert Black, argues that the appropriate measure of good faith is honesty in fact coupled with the objective reasonableness standard. This formula requires that the creditor not only believe the prospect of payment or performance is impaired, but also requires that such belief be reasonable. This is the standard embodied in the trial court's instruction to the jury.
The subjective test of honesty has been severely criticized because of the great latitude it gives the creditor and the onerous burden of proof it imposes on the debtor. In a concurring opinion in Universal C.I.T. Credit Corporation v. Shepler, 164 Ind. App. 516, 329 N.E.2d 620 (1975), Judge Garrard said:
It is clear that the drafters of the UCC intended to promote commercial dealing and credit financing by permitting creditors to realize upon their security in doubtful situations without the necessity of a specific default.
It is, however, equally clear that a purely subjective test is subject to arbitrary abuse. It would allow a creditor to be unreasonable and place the debtor in an unjust position since the creditor might at any time call the entire debt and require the debtor to prove the non-existent state of mind of the creditor. Thus, under this interpretation, the code would permit a creditor to destroy a viable contractual relationship without requiring him to justify his actions.
329 N.E.2d 620 at 625, 626. Indeed, even Professor Gilmore, one of the drafters, writes that the code intends the reasonableness standard. "The creditor has the right to accelerate if, under all the circumstances, a reasonable man, motivated by good faith, would have done so." 2 G. Gilmore, Security Interests in Personal Property § 43.4 at 1197 (1965).
Although this Court has not addressed the secured creditor's standard of conduct in deeming itself insecure since Mississippi adopted the Uniform Commercial Code, decisions prior to the code hold that the reasonableness standard is applicable. Universal C.I.T. Credit Corp., et al v. Turner, 56 So.2d 800 (Miss. 1952); Commercial Credit Co. v. Cain, 190 Miss. 866, 1 So.2d 776 (1941). Cain was the first case to adopt this standard by holding that a creditor "may proceed upon such circumstances of presently apparent danger as would furnish probable cause for the belief that the security is unsafe when viewed in good faith by a man of reasonable prudence." 190 Miss. at 871, 1 So.2d at 777. We are of the *30 opinion that this standard is the better rule of law and hereby adopt it. Of course, the existence of good faith and the reasonableness of a creditor's belief are questions of fact reserved for the jury.
The second question then becomes whether there is a right of redemption where the creditor repossesses because of its feelings of insecurity. The bank takes the position that there is no such right and argues that a right of redemption exists only in a default owing to the nonperformance of a duty, not where the default is occasioned by the creditor's insecurity. The argument assumes that there is no benefit to the creditor arising from a redemption. An examination of that assumption shows it to be erroneous.
In the case of a debtor who fails to make a payment the injury to the bank is immediate, it is the loss of the amount due plus any consequential damages. However, in the case of a creditor who accelerates a debtor's obligation because it feels insecure, there is no immediate injury, only the prospect of future injury. If the statute allows a debtor who has caused an immediate injury to repair the harm by tendering past due obligations, why would it not permit a debtor who has not caused immediate injury to save the contract by providing some assurance of performance and thus remove the creditor's insecurity? In either situation the acceleration clause has the same effect, upon failure to redeem, the creditor may sue on the entire obligation. The reasonableness of a creditor's refusal to allow a redemption in the face of a debtor's tender of assurance of performance is again a question of fact for the jury.
Further, support for this interpretation of the statute is found in its legislative history. The original Uniform Commercial Code § 9-506 allowed redemption but required the debtor to pay the entire amount due including any accelerated obligation. In adopting the Code our legislature modified it to give the debtor an opportunity to mend the breach. This was done by the addition of the following clause: "(excluding any sums that would not then be due except for an acceleration provision)... ." Miss. Code Ann. § 75-9-506 (1972).
Finally, in applying the law to the facts of this case, we must conclude that the trial court was in error when it granted the judgment non obstante veredicto. Viewing the facts in the light most favorable to the appellant, as we must, it was a jury question whether the bank's officer acted as a "reasonable person, motivated by good faith," in refusing to permit the redemption. For this reason, we reverse the judgment non obstante veredicto and reinstate the verdict of the jury, awarding appellant damages in the sum of $2,500.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.